Mary H. Dillard, plaintiff in error, vs. The Manhattan Life Insurance Company, defendant in error.

[When this cause was called, Lochrane, Chief Justice, stated that he was a policy holder, and consequently a stockholder in said Company, and interested, but upon request of counsel he presided.]

When a wife insured the life of her husband in 1859 with an agent of a New York Insurance Company, and paid the annual premiums promptly until 1862, but then failed to pay said premiums until March, 1865, when the husband died, after which, and after the close of the war, she tendered the unpaid premiums, and demanded payment of the sum insured, alleging that she was prevented by the war and by Act of Congress from paying them year, by year, on the day fixed in the policy.

Held, that the contract of the company for any future risk was dependent upon the payment of the annual premiums as they, severally, by the assessment, were to be paid, and the failure to pay, for whatever reason, could not be remedied by a tender of the premiums after the death of the person, whose life was insured.

Insurance. War. Conditions, etc. Before Judge JOHNSON. Muscogee Superior Court. May, 1871.

Mrs. Dillard's suit against the Manhattan Life Insurance Company, of New York, contained the following material averments: On the 26th of April, 1859, she paid the agent of said company, in Columbus, Georgia, where he and she lived, $141 00, as a premium, in consideration of which and of the like sum to be paid annually thereafter, with interest thereon, during the life of her husband, then living in Columbus, Georgia, said company insured the life of said husband in the sum of $5,000 00, for her sole benefit, said sum to be paid at his death, upon due notice, etc. There were in said policy various conditions upon which it was to become void. One of them was if the husband should enter " into any military or naval service whatever, the militia not in actual service excepted." Another was, if Mrs. Dillard "should not pay the said premiums on or before the day hereinbefore mentioned for their payment." It further stipulated that when said policy should cease or be or become void, all prepaid premiums should be forfeited to the company.

She promptly paid the premiums and interest which fell due prior to the 26th of April, 1862. Before that day, war was raging between the United States and the Confederate States. Georgia was one of the Confederate States, and she and her husband were resident in Georgia. By this war and the law she was prevented from paying said premiums and interest during said war. While the war continued, to-wit: on the 27th of February, 1865, her husband died a natural death, without having violated any condition in said policy. The understanding and intention of herself and said company as to the meaning of the condition as to entering military service, etc., was only that her husband should not voluntarily, of his own accord, without constraint of law, so do. And he never did so. True he was appointed Brigade Post

Quartermaster at Columbus, by President Davis, in October, 1862, and he accepted said appointment to avoid conscription, to which he was, by law, then subject, and thereby he lessened instead of increasing the company's risk.

As soon as the war ended, she offered to pay said company the unpaid premiums and interest then due, complied with the conditions of said policy as to proof of death, etc., as nearly as could be, and demanded payment of the policy. The company refused to pay her, claiming that the policy was of no force, by reason of the premises.

Upon demurrer this cause was dismissed. That is assigned as error.

H. L. BENNING; JAMES M. RUSSELL, for plaintiff in error. The war excused payment of premiums : Wheat. Int. Law, 379, 385, 392; 1 Kent's Com. 74, 76, 77; Ch. L. of N., 82, 84. Wildman's Int. L., 8, 15 ; Vattel, 320; 13th Ves., 71; 40th Ga. R., 302, 60; 2 Com. Dig., Chancery obligations, (4 D., 10.) Act of God or the law making compliance impossible, suspends operation of the conditions: Coke Litt., 206 *a;* 34th Ga. R., 207, 548; 40th, 60; Ch. on Con., 630; *Wallace vs. Sanders,* last term. When the war ended, the contract revived: Com. Dig., Chancery obligations, (4 D., 10,) citing R. Ca. ch. 72. Being in military service was no breach, because it was compulsory: Burrows L. Assurance, 68, 69; Brown's L. Max., 259 ; Coke Litt., 42, 183. Agreement not to fight for one's country, void : R. Code, sec. 2681. *Verba chartarum fortius accipientur contra proferentem:* Br. L. Max., 254; R. Code, sec. 2715, p. 4; 1 Burr., 341, 349; Conscript Acts passed the 6th of April, and 27th of September, 1862—their force: 34th Ga. R., 31, 34. Post Quartermaster's place did not increase risk and is immaterial: R. Code, secs. 2801, 2819; 5th Ga. R., 184; 8th Mass. R., 380; Dudley's R., 23 ; 34th Ga. R., 145. If breach, the law compelled it: 2 Coke Litt., 206 *a;* 34th Ga. R., 207, 548 ; 40th, 60; Ch. on C., 630. Penalty, relieved

from by subsequent performance: 2 Story Eq., sec. 1320, *et seq;* 12 Ves. R., 289; R. Code, sec. 3060; 1st Bro. Ch. C., 418, etc.

SMITH & ALEXANDER, for defendant. The contract is based on payment of premiums: R. Code, sec. 2752; 1st Phil. on Ins., 2, and works on insurance *passim.* Non-payment made contract void for want of consideration. Once bad never good without consent. After death *too late to* pay premium: 8th Ga. R., 534; 5th Tenn. R., 695; 12th East's R., 183. By contract his entering military service avoided the policy; it increased risk; Emengon, 4, 13, 51; Aug. on F. Ins., 235, 334; 1st Arn. on In., 2, 3.

McCAY, Judge.

We recognize fully the general doctrine contended for by the plaintiff in error. It would have been *illegal* for Mrs. Dillard to pay the premium to the company during the war, contrary to Act of Congress. And were this a case of a *forfeiture* for the failure, we should hold that the *forfeiture* was prevented by the illegality of the performance of the condition. But is this such a case? The company contracts to pay so much at the death of the insured, if the annual premiums are paid as stipulated. It is clear from the policy and from the known practice of all companies, that the insured has a right at any time to refuse to pay and give up his policy. The contract, upon its face, requires to be renewed from year to year by the payment of the premium. Indeed, a contract of life insurance is, at best, nothing but an undertaking that the company will take the annual premiums paid, invest them safely, and pay to the insured the product, after deducting the expenses of the business. Indeed, if every person insured lived to an average age, this would be exactly the contract. But as any individual may die at any time, the company agrees to pay him what his premiums *would amount to,* making up its losses on him by

the payments of those who live beyond the average age. The regular annual payment of the premium agreed upon is thus a condition *precedent* of the contract, and not a condition subquent. And it is just here that the authorities relied upon fail to apply. If a condition subsequent become illegal, there is no forfeiture; for the estate having once vested, it shall not be divested because the party fails to do an illegal or impossible act: Code, section 2680. But it is different with a condition precedent. If that be illegal the right never vests. It is not a question of forfeiture, but a failure to do the thing necessary to acquire the right: Brown's Legal Maxims, page 176. And this, as it seems to me, is a distinction based upon principles of justice and sound sense.

If I promise a man to sell him my house, provided he appear, on a particular day with the money, and he fails for whatever reason other than my fault, he has no right in the house. But if I sell him the house, and it is agreed that he shall forfeit it if he fail to pay me for it in full by a particular day, then the *cause* of his failure may, both in equity and sound sense, become very material.

We are very clear that, as the case is made by the record, the judgment is right.

Judgment affirmed.