MOLONEY *v.* GERMANIA FIRE INSURANCE CO.

1. INSURANCE—PRINCIPAL AND AGENT—NOTICE—CHATTEL MORT-
GAGE—INCUMBRANCE.

> Notice to a solicitor of fire insurance, who induced insured to
> take out a policy, that a chattel mortgage existed on the
> property, was not notice to defendant company, which was
> not shown to have employed the solicitor and had only one
> agent, by whom the solicitor was employed, in the county
> where the policy was written.

2. SAME—WAIVER—ESTOPPEL.

> Where defendant's insurance adjuster, at the time he made out
> proofs of loss, was informed of the existence of an incum-
> brance on the insured property, and the insurer did not learn
> of the fact until later, and no assurance was given or act
> done on which the insured relied to his prejudice, a delay of
> about sixty days in notifying him that the company refused
> to pay was not a waiver of the defense, nor did the delay
> estop defendant from urging it.

3. SAME—COMPROMISE.

> *Held*, that no sufficient evidence of any compromise made by
> the insurance adjuster appeared.

Error to Chippewa; Steere, J. Submitted April 14,
1911. (Docket No. 90.) Decided January 23, 1912.

Assumpsit by John F. Moloney and others as assignees
of Thomas McRae against the Germania Fire Insurance
Company upon a policy of insurance. Judgment for
plaintiffs. Defendant brings error. Reversed and no new
trial ordered.

*Davidson & Hudson* (*Wilkinson & Younglove*, of
counsel), for appellant.

*F. T. McDonald*, for appellees.

OSTRANDER, J. The defendant, a foreign corporation,
issued its policy of insurance to Thomas McRae, plaintiffs'

assignor, in and by which it promised said McRae indemnity for loss by fire upon his stock of liquors, tobacco, saloon fixtures, and furniture, including a cash register, in the sum of $500, from August 24, 1908, to August 24, 1909. The property, which was situated at Brimley, Chippewa county, Mich., was entirely destroyed by fire October 21, 1908, after which McRae assigned his policy and demand against the defendant to the plaintiffs, who later on began suit upon the policy, which resulted in a verdict and judgment in their favor.

Appellant has discussed its assignments of errors under the following heads:

" (1) The defendant was entitled to a directed verdict, because it conclusively appeared that McRae made false statements in his proof of loss regarding the amount and value of property destroyed by the fire.

" (2) The defendant was entitled to a directed verdict, because it conclusively appeared that McRae made false verbal statements to Mr. Wright and false written statements in his proof of loss regarding the chattel mortgage.

"(3) The policy was void (not merely voidable) at the time of the fire; there being a chattel mortgage on a portion of the property insured not disclosed to the insurer.

" (4) At the time of the fire, the defendant had an absolute defense by reason of the chattel mortgage. Mr. Wright, employed as an independent adjuster, had no authority to revive the policy and waive that defense.

" (5) If it be held that Mr. Wright had authority to waive the chattel mortgage defense, then such waiver must be in writing on account of the provision of the policy requiring written indorsement or an addition to the policy.

" (6) Assuming for the purpose of this paragraph that Mr. Wright was told of the existence of a chattel mortgage, and did attempt to ignore or waive it as a defense in this matter, nevertheless the insurance company is not bound by such action on his part for the reason that there was absolutely no consideration for such a waiver.

" (7) Conclusion."

As to the first and second of these propositions, it is enough to say that they involve disputed questions of fact

which were submitted to the jury. As to the others, they present the single question whether, under the circumstances disclosed by the record, the policy was void because at the time it was issued, and at the time of the fire, there was an undisclosed chattel mortgage upon a portion of the property insured. To answer this question involves an examination of testimony, and, so far as appears to be necessary, the testimony examined will be referred to.

In May, 1908, the insured borrowed $300 from the Soo Brewing Company to pay his tax as a liquor dealer; and, to secure this loan, he gave the chattel mortgage which is in question here. It was not filed at Brimley, but was filed at Sault Ste. Marie. It called for payment in six monthly installments. At this time McRae held a policy, insuring the same property, issued by the defendant in August, 1907, expiring in August, 1908. When it expired, the policy in suit was issued. Neither policy contained any permission or consent of the company, or any evidence of any consent or waiver of the company, with respect to the chattel mortgage. William J. Miller, the man who delivered the insurance policies and collected the premiums, drew the chattel mortgage, and signed it as a witness. His connection with the defendant company, if he had any, does not appear. He solicited McRae to place the insurance; he delivered the policies to McRae; he collected the premiums; he notified the agents of the company at Sault Ste. Marie after the fire that a fire had occurred, received a letter in reply, and gave the reply to McRae. The policies were issued at Sault Ste. Marie by the Adams Insurance Agency; are countersigned by the agency, and the undisputed testimony of the State agent of the company is that the company never had an agent in Chippewa county except the Adams Insurance Agency. It does not appear that the defendant ever heard, or knew, anything about Mr. Miller. We assume that he was acting for the Adams Insurance Agency in securing the business. The trial judge, in the charge to the jury, said that the disclosed connection of Mr. Miller

with the matter was not one which warranted them in finding that the company was bound by any notice he had of the existence of a chattel mortgage. As we are of opinion that this instruction conforms with the testimony and the law, we may dismiss Mr. Miller and his connection with the matter from further consideration.

The policy was void when the fire occurred, but the defendant company had no knowledge of the fact which made it void. McRae was notified that Mr. William S. Wright would adjust the loss for the defendant company. Mr. Wright is an independent adjuster, living in Marquette, and he adjusts losses for the defendant company and for other companies. The matter of this loss was referred to him a few days after the fire, and he went to Brimley, and while there prepared, and McRae verified, proofs of loss, and forwarded the proofs of loss and his report to the State agent of defendant. It is the contention of the plaintiffs that Wright was informed by McRae of the existence of the mortgage, and that Wright's knowledge of the fact, coupled with what he did and said, is evidence of a waiver by defendant of the forfeiture of the policy. There is a clear dispute of testimony upon the question whether McRae informed Wright about the chattel mortgage. McRae testified that he advised Wright of the existence of the mortgage, and also testified:

" After we left Mr. Moloney's office, Mr. Wright told me that the law gave them 60 days to pay the claim; but, if I would throw off $5, they would settle in 20 or 30 days. I said I would agree to that."

We find in the record no other or further evidence of acts or statements upon which a claim of waiver, or estoppel, can by any possibility be based. There is no testimony tending to prove that Wright had in fact any authority from the defendant to do anything but adjust. Assuming that he was an agent of defendant, within the meaning of 2 Comp. Laws, § 7246 (see *Pollock* v. *Insurance Co.*, 127 Mich. 460 [86 N. W. 1017]), we think

it must be said as matter of law that the court was in error in submitting the question of waiver to the jury. Counsel for appellees cites and relies upon a number of the decisions of this court which are not strictly in point. What is involved in the contention of plaintiffs is not a waiver by a principal or agent in the course of making a contract of a matter or thing which they have an undoubted power to waive—a waiver before the fact—but an estoppel which has the effect of reviving a liability, which, by the terms of an existing contract, is ended.

In *New York Central Ins. Co.* v. *Watson*, 23 Mich. 486–488, it was said, in considering the liability of an insurance company upon certain policies which, by their terms,. and by the act or omission of the insured, were avoided:

"Nothing could revive them short of a new contract on valid consideration, or such conduct as, by misleading the insured to their prejudice, would operate as an estoppel. There is no item of testimony tending in the remotest degree to show that any such contract was made, or that the insured did anything by the encouragement of plaintiff in error or their lawful agents to their own prejudice, or anything which they would not have done under other circumstances. There is no evidence that the insurers knew anything about it."

In *Security Ins. Co.* v. *Fay*, 22 Mich. 468, 473 (7 Am. Rep. 670), in referring to earlier decisions, it is said:

"The waiver that is spoken of in these cases is another term for an estoppel. It can never arise by implication alone, except from some conduct which induces action in reliance upon it, to an extent that renders it a fraud to recede from what the party has been induced to expect."

In no case has this court gone further, in applying this doctrine of estoppel, than in the early case of *Pennsylvania Fire Ins. Co.* v. *Kittle*, 39 Mich. 51, 54. Upon this subject the opinion proceeds as follows:

"The facts submitted were that, after the loss, the adjusting agent of the defendant called upon the plaintiff,

168 MICH.—18.

and, after investigation, made an offer to pay by way of compromise $375 [less than one-half the proper proportion of the loss], at the same time objecting to the taking out of the second insurance; that this offer was declined, and the agent went away, and soon after wrote the plaintiff that she might go on and make out her proofs, and the matter would then be taken into consideration; that subsequent correspondence took place between the agent and the plaintiff respecting the proofs, the former demanding more particularity in what was furnished, and it was not until six months after the offer for a settlement was made that the agent notified the plaintiff, who in the meantime had been endeavoring to make the proofs satisfactory, and to overcome the objections he was making thereto, that, 'in addition to the objections heretofore made,' the defendant would insist upon the forfeiture because of the second insurance.

"We think the jury were warranted in finding that the defendant, by calling upon the plaintiff to go on and make out her proofs, and by requiring her to be at the trouble and expense of correcting these to satisfy the criticism made by the agent, without giving her to understand the company would rely upon the forfeiture, should be held to have waived it; and that, if it was the purpose all the while to insist upon it, the agent did not act towards her in good faith. We also think the jury would have a right to infer from the final letter of the agent that he understood the objection of forfeiture had not been insisted upon previously."

See, also, *Carpenter* v. *Insurance Co.*, 61 Mich. 635, 644 (28 N. W. 749); *Cleaver* v. *Insurance Co.*, 71 Mich. 414 (39 N. W. 571, 15 Am. St. Rep. 275); *Granger* v. *Assurance Co.*, 119 Mich. 177 (77 N. W. 693).

In the case at bar, the adjuster, as has been stated, made out the proofs of loss, and it is said by McRae that in making them out he asked about incumbrances, and was informed of the existence of the chattel mortgage. The proofs of loss, sworn to by McRae, state that the property was not incumbered. McRae testified that he did not read them, and that they were not read to him. He is disputed by the adjuster. It is undisputed that later on, having been informed by the defendant's State

agent that the property was mortgaged, Wright called McRae by telephone, and asked him if there was a chattel mortgage on the property. He says McRae told him there was none, and that he then asked him to send him a certificate of the fact from the township clerk. Such a certificate was procured by McRae and sent, and it showed there was no mortgage on file in his office. McRae testified that he answered Wright's telephone message by saying, "Yes, I told you there was a mortgage on part of it," that he went to the township clerk, not knowing whether the mortgage had ever been filed, and procured the certificate that there was no mortgage on file there and sent the certificate to Wright with a letter reading:

"Inclosed you will find statement from township clerk. Hope this will be satisfactory. If there is any other information you would like, kindly let me know by return mail, as I would like to have this matter straightened up."

The testimony of the State agent of defendant tends to prove, and is not disputed, that, after receiving the proofs of loss and report from Wright, he sent them to the Chicago office of defendant, asking that the matter be held for 60 days, and that a report on McRae be procured. From the report he learned of the chattel mortgage, and upon corresponding with the Adams Insurance Agency received through them a certified copy of the mortgage, after which he communicated the fact to Mr. Wright. The proofs of loss were dated and sworn to November 6, 1908. Under date January 4, 1909, McRae and plaintiffs were notified that the defendant denied liability. It is evident that the insured did nothing because of any encouragement of defendant or its agent to his prejudice, or anything which he would not have done under other circumstances. It is not claimed that plaintiffs were prejudiced by any statement or conduct of defendant or its agents.

In argument, some attempt is made to support the idea that the adjuster and McRae made a settlement. This is based upon the testimony of McRae which is hereinbefore

set out. Without discussing the question of the authority of Wright to make a settlement—to bind defendant to pay—or the right of McRae to settle a demand which he had already assigned to creditors, we think the testimony of what was said is not evidence of an admission and settlement of liability. And McRae must have understood from the inquiry thereafter made that whether there was or was not a chattel mortgage upon the insured property was regarded as an important fact.

The judgment is reversed. A new trial is not granted.

MOORE, C. J., and BLAIR, STONE, and BIRD, JJ., concurred.