RUDDOCK *v.* DETROIT LIFE INSURANCE CO.

1. INSURANCE—LIFE INSURANCE—RISKS ASSUMED—MILITARY SERVICE NOT COVERED—PUBLIC POLICY.

The provision in a life insurance policy that military or naval service in time of war without a written permit therefor issued by the company was a risk not assumed, *held*, not contrary to public policy.

2. SAME—VOLUNTARY OR INVOLUNTARY MILITARY SERVICE—NO DISTINCTION IN CONTRACT.

Nor will the courts differentiate between voluntary and involuntary military service, where no such distinction was made in the policy.

3. SAME — CONTRACT — CONSTRUCTION MOST STRONGLY AGAINST MAKER.

The contract of insurance having been prepared by the company, if it is capable of two interpretations, the one most favorable to the insured should be adopted.

4. SAME—"MILITARY SERVICE"—WHAT CONSTITUTES.

One has entered "military service" when he has passed the examination, taken the oath, been enrolled as a soldier, and become subject to the orders of the military branch of the government.

5. SAME—CONSTRUCTION OF POLICY.

Where an application for an insurance policy provided that military or naval service in time of war was a risk not to be assumed, and the policy provided that "military and naval service in time of war shall be construed to include work as a civilian in any capacity whatever in connection with actual warfare," death of insured from pneumonia while in training at a military camp after being inducted into military service *held*, a risk not covered by the policy, although he was not engaged in actual warfare before the enemy.

6. SAME—NOTICE INSUFFICIENT WHERE PERMIT REQUIRED.

Where the policy provided that death of insured while in the military or naval service without a written permit issued by the insurer was a risk not assumed, mere notice

by insured to insurer that he had entered military service would not be sufficient to render insurer liable for his death thereafter.

7. SAME—WAIVER—ESTOPPEL.

Where the policy was payable to insured's estate, and on notice of his death insurer furnished blank proofs and suggested that an administrator be appointed before it had any notice or knowledge that insured died while in military service, it cannot be contended that such action would estop it from making the defense that it was not liable because insured had failed to secure a written permit as provided in the policy.

8. SAME—WAIVER OF FORFEITURE BASIS OF ESTOPPEL.

The doctrine of waiver and estoppel has largely been applied in cases where the insurance companies have relied on forfeitures, and the courts have held that, if the companies have led the other party, to his prejudice, to his expense, to understand that such forfeitures would not be insisted upon, then the companies would be estopped from asserting such defenses.

9. SAME—WAIVER AND ESTOPPEL INSUFFICIENT TO CREATE LIABILITY.

But the doctrine of waiver and estoppel cannot be applied so as to create a liability not created by the contract, or to create a liability contrary to the express provisions of the contract which the parties made.

10. PLEADING—AMENDMENTS—DISCRETION OF COURT—STATUTES.

Under 3 Comp. Laws 1915, § 12478, it was within the discretion of the trial court to permit defendant to amend its pleading by adding a notice under the plea of the general issue.

Error to Calhoun; North (Walter H.), J. Submitted January 22, 1920. (Docket No. 21.) Decided April 10, 1920.

Assumpsit by James A. Ruddock, administrator of the estate of Charles H. Ruddock, deceased, against the Detroit Life Insurance Company on a policy of insurance. Judgment for defendant *non obstante veredicto*. Plaintiff brings error. Affirmed.

*J. M. Hatch & Son,* for appellant.

*F. H. Watson,* for appellee.

Plaintiff's decedent was his son, nearly 27 years of age and unmarried. On September 2, 1917, deceased made application to the defendant for a policy of insurance in the sum of $2,000 and paid the regular premiums for one year. His application contained the following:

"I hereby certify that I have read all statements and answers in this application, and agree, on behalf of myself and of any person who shall have or claim any interest in any contract issued hereunder: * * *

"(6) That military or naval service in time of war is not a risk assumed under any policy hereunder applied for, and if I shall enter or be engaged in such service (except in time of peace) without a written permit therefor issued by the company, no claim shall exist under any policy issued hereunder except for the net reserve held against it."

He passed the medical examination and defendant issued its policy No. 18072 effective October 4th, payable to decedent's estate. The policy contained the following:

"This policy and the applications therefor, a full and true copy of which is hereto attached, shall constitute the entire contract between the parties hereto. It is unrestricted as to travel, residence, or occupation and shall be incontestable after one year from date, except for non-payment of premium and except for naval or military service in time of war, without a permit, which are risks not assumed by the company, provided that, in case of the death of the insured while engaged in such service, without a permit, the amount payable hereunder shall be the reserve on the policy at date of death. Military and naval service in time of war shall be construed to include work as a civilian in any capacity whatever in connection with actual warfare."

On July 26, 1918, he was inducted into the military

service of the United States under the provisions of the act of congress of May 18, 1917 (40 U. S. Stat. p. 76). On October 9th, he died at Camp Custer of pneumonia. The policy of insurance contained a clause giving the insured thirty days' grace in which to pay the annual premiums. The usual notice that such premium was due was sent out, and came to plaintiff's knowledge. He wrote defendant notifying it of his son's death and inquired as to the steps necessary to collect the insurance. The company informed him that as the insurance was made payable to the estate of his son it would be necessary to have an administrator appointed. Blanks for proof of loss were enclosed with the suggestion that they could be completed as soon as the administrator was appointed. At this time defendant had no knowledge or notice that deceased had been inducted into the service, or that he died when in such service. Upon receipt of the blank plaintiff wrote defendant as to filling it out, stating that his son died in some hospital at Camp Custer and asking if more definite information as to the place of his death would be required. Defendant replied that it would be sufficient to state that the son died in the hospital at Camp Custer and stated that if he could supply the name of the attending physician to do so, otherwise to state in the blank that he could not give the information. On December 1st, defendant acknowledged receipt of plaintiff's proof of claim and on December 6th wrote him calling attention to the provision of the policy above quoted and denied liability.

This action was brought to recover the amount of the policy less one year's premium due at the time of decedent's death. Both parties asked for a directed verdict. The trial judge, in order to have opportunity to more fully examine and consider the questions, re-

served decision on defendant's motion and directed a verdict for the plaintiff. After considering the questions reserved he filed an opinion directing judgment for the defendant notwithstanding the verdict.

The grounds upon which the plaintiff asked for a directed verdict, and they are largely the grounds upon which reversal is sought in this court, are as follows:

"*First*. For the reason that the entry of plaintiff's intestate into the military service was involuntary and not his act, but the act of the Government for which he was in no way responsible in any greater degree than for an act of God.

"*Second*. For the reason that the entry of plaintiff's intestate into the military service being involuntary on his part and by compulsion of the Government, it thereby suspended any contract plaintiff's intestate was under to defendant company to notify them of his induction into the service.

"*Third*. For the reason that the plaintiff's intestate had not at the time of his death entered into active military service, but had entered into only such military service as was permitted under the terms of his policy.

"*Fourth*. For the reason that plaintiff's intestate, under the terms of his policy, had until November 4, 1918, to give notice of his entry into the military service and that his death was the act of God and excused him from giving such notice.

"*Fifth*. For the reason that the defendant company have required plaintiff to furnish proofs of death after notice to them that plaintiff's intestate died at Camp Custer and therefore waived and are estopped from making any defense under that provision of said policy covering the notice to the company of entry into the military service.

"*Sixth*. That by pleading the general issue knowing all the facts, they waived any such defense such as they are now making and that they thereby waived those provisions of the policy which they are now seeking to enforce."

FELLOWS, J. (*after stating the facts*). We shall consider the questions raised in their order.

1 and 2. If the clause of this contract of insurance, which is involved in this action, is not contrary to public policy we perceive no good reason for holding it to be invalid. What its construction should be we shall consider under another head. The diligence of counsel has brought to our attention but one case where the question of public policy was involved. With the limit of time at our disposal we have found but one other.

In the case of *Duckworth* v. *Scottish Widows Fund Life Assurance Society*, 33 Times Law Rep. 430, this was the only question involved. The society had issued its policy of insurance in the sum of £50,000 upon the life of one Duckworth; such policy contained a clause that if the assured "shall enter into or engage in any military service except in Great Britain or Ireland * * * without the license of the directors previously obtained, then * * * this policy shall be void." It was urged that the clause was contrary to public policy in that it tended to induce Duckworth not to serve his country as a soldier. The contention was overruled. We quote from the report of the case:

"His Lordship (Mr. Justice Coleridge) did not think that the law could reorganize the business of insurance companies. Business was business, and to enforce on insurance companies a law that they should make no distinction between the risk of staying at home and that of fighting abroad, on the ground of public policy, was, in his opinion, to ride the horse of public policy too hard. To refrain from making the distinction might involve them in ruin. Therefore, he did not think there was anything contrary to public policy in this insurance policy."

In a very recent case before the supreme court of Arkansas (*Miller* v. *Bankers' Life Ass'n* [Ark.], 212 S. W. 310) the provisions of the policy were quite

similar to the ones in the instant case. It was urged
that such provisions tended to prevent voluntary en-
listments and induced resistance to the draft laws
and was therefore contrary to public policy. But the
court said:

"We do not think the argument is well founded.
An insurance company has the right to select the par-
ticular risks it is willing to assume, and there is no
public policy against a contract of this sort exempt-
ing the insurance company, in advance, from liability
for death of the insured while in the military or naval
service of the government. The stipulation does not
provide for a forfeiture of the policy, but merely for
an exemption from liability under certain circum-
stances and conditions. It holds out no inducements
to the assured to refrain from enlistment in his coun-
try's service, and does not constitute, in any sense,
an agreement not to enlist or to evade the draft law."

Other cases having more or less bearing on this
question will be considered later but these two cases
are the only ones we have been able to find which are
directly in point.

It must be borne in mind that the solvency of in-
surance companies is maintained by the collection of
their premiums; that risks differ, and that a rate
adequate for one condition may not be adequate for
another; and, eliminating the question of the power
of the State to prescribe a standard form of contracts
of insurance and otherwise regulate such corporations
(questions not here involved), may contract with the
insured upon the terms under which it shall be bound.
Both the parties to this contract knew when it was
entered into that a state of war existed; both knew
that deceased was of draft age, that he was a single
man in good health as his medical examination showed,
and both knew he was subject to be called by our
Government to do military service. With this knowl-
edge, possessed by both, this contract of insurance

was entered into. The Government to which both owed allegiance had the right to call the deceased to the service. We are unable to perceive that public policy prevented them from contracting that if that event took place defendant should not be bound if death occurred while in such service unless a permit was given and an additional fee or premium paid. The parties did not differentiate between voluntary and involuntary service, between service performed under enlistment and service performed under the draft law and we cannot without making a contract for them read such differentiation into the policy.

3. Cases involving this question are not as numerous as one might expect, nor has much attention been given it by text writers. The use of different language in the policies considered in the cases has led to varying results as the language has varied; and in most of the cases the courts have limited their discussion and consideration to the precise language of the policy before them. In the cases the rule is recognized that the contract of insurance having been prepared by the company, if it is capable of two interpretations, the one most favorable to the insured should be adopted. We shall consider some of the cases which by analogy may be thought to apply.

We are not impressed that *Cohen* v. *Insurance Co.,* 50 N. Y. 610, and *Sands* v. *Insurance Co.,* 50 N. Y. 626, cited by the plaintiff, are controlling here. These cases involve the same question and were handed down together. In both cases the facts are substantially these: Prior to the war of the rebellion the insurance companies, both of the State of New York, had issued policies of life insurance to residents of the southern States. The premiums had been paid until the beginning of the war; during its continuance they were not paid; after the war the premiums were tendered or offered; the insured in each case was a non-com-

batant. It was held in both cases that during the war trading with the enemy was prohibited, that the insured could not be required to do an unlawful thing, *i. e.*, pay money to a citizen of the enemy country, and that the contract of insurance was not forfeited but was suspended during the war. The opinions by Justices Allen and Peckham are able ones, but this is likewise true of the opinion of Justice Carpenter in *Worthington* v. *Insurance Co.*, 41 Conn. 372, where an exactly opposite conclusion was reached on the same state of facts. And in *Dillard* v. *Insurance Co.*, 44 Ga. 119, the supreme court of Georgia reached the same conclusion as did the Connecticut court. We need not further pursue the cases where the situation was the same as in these cases as they are not applicable to the instant case.

In the case of *Welts* v. *Insurance Co.*, 48 N. Y. 34, the language of the policy was:

"* * * or shall, without such previous consent thus endorsed, enter into any military or naval service whatsoever (the militia not in actual service excepted), the said policy shall be void, null and of no effect."

The insured while acting as superintendent in the construction of a railroad bridge for military purposes located some 30 miles behind the Union lines, and more than that distance from the confederate army, was killed by robbers in no way connected with either army. He was not an enlisted man and held no office of a military character. It was held that the company was liable. The learned commissioner (Leonard) who wrote the opinion seemed to lay stress on the fact that he was not an enlisted man; he says:

"I am not much experienced in military affairs; but it is generally understood that there is a record of the entry of both officers and privates into the military service."

And in further considering the term "military service," he said:

"The general understanding of the term includes such persons only as are liable to do duty in the field as combatants."

The case must be regarded as holding that one who has not enlisted or been drafted, who is a non-combatant, and is not *liable* to be called upon to perform service in the field was not in "military service" within the meaning of the policy. It does not determine that the converse of the proposition would be true unless it may be inferentially.

A cursory examination of *Mutual Benefit Life Ins. Co.* v. *Wise,* 34 Md. 582, might lead to the impression that the court held as matter of law that a chaplain was not engaged in military service, but a more careful examination of the case will demonstrate that due to the uncertainty of the proof the question was held to be a question for the jury. However, the United States Supreme Court in *United States* v. *La Tourette,* 151 U. S. 572 (14 Sup. Ct. Rep. 422), held that a post chaplain was engaged in military service within the meaning of the act of July 15, 1870 (16 U. S. Stat. p. 315).

In *LaRue* v. *Insurance Co.,* 68 Kan. 539 (75 Pac. 494), the policy contained the following clause:

"Military or Naval Service. — The insured under this policy is permitted to serve in the militia or in the military or naval force of the United States in time of peace without prejudice to his policy; and he may so serve in time of war by giving the company notice in writing, and paying an extra premium therefor, not to exceed three per cent. per annum upon the amount insured. But should such notice not be given and the extra premium for war hazard not be paid at the time the risk is incurred, the company will be liable for the reserve only on this policy, computed according to the actuaries' table of mortality and four per cent. interest."

The insured was a soldier, with his regiment in the Philippine Islands. He was killed at the village of Loculan in the island of Mindanao by a blow from a bolo in the hands of an insurrecto. Upon the trial the plaintiff offered to prove that at the village of Loculan there was no armed resistance against the forces of the United States, the insured had been sent there with his company after active service for a rest; that the guards had only empty guns and that there was no disturbance of any kind on that island. The trial judge, holding that the courts would take judicial notice that a state of insurrection existed, declined the offered proof and permitted recovery only for the amount of the reserve. This action was affirmed.

Let us now examine the cases growing out of the late war. In *Coxe* v. *Assurance Corp.*, 2 K. B. Div. 629 (1916), the action was brought on a policy of accident insurance which contained a condition that defendant did not insure against death "directly or indirectly caused by, arising from, or traceable to * * * war." The insured, Captain Ewing, an officer in the reserve of officers, was engaged in guarding the South Eastern Railway in and about Folkestone Junction. In the performance of this duty he was struck by an engine and killed. The finding of the arbitrator that the insurance company was not liable was sustained.

In the case of *Redd* v. *Insurance Co.*, 200 Mo. App. 383 (207 S. W. 74), the insured died of pneumonia at a training camp. The application for insurance contained the following clause:

"That active service in the army or navy, in time of war, shall invalidate said contract of insurance, unless a permit for such service shall have been applied for in writing and indorsed upon the policy by the company, and such extra premium paid therefor upon notification as the then rules of the company may provide."

And the following appeared in the policy upon which the action was brought:

"In case of death from service in war without permission from the company, the full reserve for this policy at the time of such death only will be paid."

In the majority opinion it is said:

"Defendant does not seem to draw any distinction between service in the army and 'active' service therein.   We believe that one has entered the service of the army when he has passed the examinations, taken the oath, been enrolled, and has subjected himself to the orders of the military.   See *Welts* v. *Insurance Co.,* 48 N. Y. 34 (8 Am. Rep. 518).   It is therefore apparent that insured had entered service in the army at the time of his death.   However, we believe that there is a distinction between service in the army and 'active' service therein."

The court then considers the word "active" found in the application and the term "service in war" and laying particular stress on the word "active" and considering "active service" as service before the enemy held that the plaintiff was entitled to recover.

In the case of *Kelly* v. *Insurance Co.,* 169 Wis. 274 (172 N. W. 152, 4 A. L. R. 845), the application contained the following:

"Military or Naval Service or Work in Connection with Warfare.   If the insured shall, within two years from date of this policy, engage in any military or naval service, or in any work as a civilian in any capacity whatsoever in connection with actual warfare, and shall die within two years of the date of this policy as a result, directly or indirectly, of engaging in such service or work, the liability of the company under this policy shall be limited to the return of the premiums paid, without interest."

The insured, an enlisted man, was engaged in supervising the construction and operation of sawmills in France more than a hundred miles from the zone of actual warfare.   While going from one mill to an-

other on a motorcycle, the motorcycle skidded, throwing him against a tree, resulting in his death. In the preliminary statement, Mr. Justice Rosenberry, who wrote for the court, says:

"It is admitted that at the time of his death the insured was engaged in the military service of the United States. The crucial question is, Did the insured die as a result, directly or indirectly, of engaging in the military service?"

He then proceeds to discuss the peculiar language of the clause as applied to the facts of the case, holding that the cause of the death was as common to civil as to military life, and says:

"The policy does not say that recovery shall be limited to the return of premiums paid if death shall occur while the insured is engaged in the service or work described, but the limitation applies only to death which occurs, 'as a result directly or indirectly of engaging in such service.'"

—and holds that the company is liable under the policy then under consideration.

In *Miller* v. *Bankers' Life Ass'n, supra,* the language was quite similar to the clause in the policy here. The provision was as follows:

"It is expressly provided that death while in the service in the army or navy of the government in time of war is not a risk covered at any time during the continuance or reinstatement of this policy for any greater sum than the amounts actually paid to the company thereon. * * *

"This policy shall be incontestable two years from its date except for nonpayment of premium calls, or death while engaged in or caused by violation of the law or while in the service of the army or navy of any government, which is not a risk covered at any time during the continuance or reinstatement of this policy for any greater sum than the amounts actually paid to the association thereon."

The insured had died from pneumonia at Camp Beauregard, La., after his induction into the service.

We have already quoted from this case and will not quote further. It was held that under the terms of the policy the defendant was not liable, the insured at the time of his death being in the service in the army; and that the clause quoted exempted the defendant from liability under the facts which were substantially identical with those in the case at bar. The case is not distinguishable from the one we are considering.

An examination of the authorities is convincing that one has entered "military service" when he has passed the examination, taken the oath, been enrolled as a soldier, and becomes subject to the orders of the military branch of the Government. This, we think, is clearly the common understanding of that term. He then gives up for the time being the occupation of a civilian, and takes up the tasks of a soldier. He may no longer come and go as he pleases. He is constantly subject to the orders of his superiors. If he violates the articles of war he is tried by court martial, a military court. His status is then fixed. He is as clearly in the military service when in training as when before the enemy. We think the parties to this contract so understood the term, as "military service" in times of peace did not suspend the contract or relieve defendant of liability. The parties had the right to draw the line where liability would cease in time of war. They drew it at the point where the insured entered "military service," when he was inducted into that service. Unless we interpolate the word "active" or otherwise change the language of the contract we must hold that the defendant was not liable under the terms of the contract. We recognize the rule that if two reasonable interpretations of the contract are permissible we should adopt the one most favorable to the insured, the contract having been prepared by the insurer. This rule is a salutary one and we have no disposition to weaken its force. We

should, however, be careful to guard against its misapplication. It is not applicable where it is necessary to read something into the contract that the parties have not put there in order to make it susceptible of a double construction. We are constrained to hold that defendant was not, under the policy, required to pay upon the death of deceased, which occurred after he was inducted into the military service of his country during a time of war and while he was still in such service.

The language found in the policy, "military and naval service in time of war shall be construed to include work as a civilian in any capacity whatever in connection with actual warfare," cannot aid the plaintiff; on the contrary it indicates that "military service" as applied to a soldier does include service not connected with actual warfare before the enemy. This language tends to strengthen rather than weaken the defendant's contention, and does not impress us as in any way sustaining the plaintiff's contention or as militating against the conclusion we have reached.

4. Counsel overlooks the fact that the terms of the policy require that a "written permit" be issued by the company. Nothing is said in the policy about giving notice by insured of his entry into military service. What the contract requires is that the company shall give its written consent that it will be liable when insured is engaged in military service in time of war before such liability shall attach. We infer that such addition to its liability would be accompanied by an additional fee or premiums. It was so stated at the argument.

5. But it is insisted that the doctrine of waiver and estoppel should avail the plaintiff; and it is here insisted for the first time that the case should at least have been submitted to the jury on this question. The argument is made that plaintiff has been put to ex-

pense in procuring the appointment of an adminis-
trator and in making out the proof of loss, and that
this was done at the suggestion of defendant, and it
is urged that for this reason it has waived the de-
fense here asserted and is estopped from making this
claim.    Waiver as applied to this class of cases is
bottomed on the doctrine of estoppel.    *New York Cent.
Ins. Co.* v. *Watson*, 23 Mich. 486; *Moloney* v. *Insur-
ance Co.*, 168 Mich. 269; *Sweeney* v. *Insurance Co.*,
199 Mich. 584.    It is quite doubtful that plaintiff's
case, if it is one where waiver and estoppel may be
invoked, is within the cases where the doctrine has
been applied.    Defendant sent the blanks for proof
of loss and made the suggestion that an administrator
be appointed before it had any notice or knowledge
that the insured was in the military service of his
country at the time of his death.    It surely should
not be estopped by these acts from making a defense
of which it then had no knowledge or notice.    But
in the view we take of the case we think it unneces-
sary to pursue this line of thought further or to con-
sider whether any subsequent acts amounted to a
waiver as we are clearly of the opinion that the case
is not one where the doctrine of waiver and estoppel
may be invoked.

The cases where the doctrine of waiver, of estoppel,
has been applied have largely been cases where the
insurance companies have relied on a forfeiture of the
contract, upon breaches of the warranties and condi-
tions to work such forfeitures; and in many such
cases this court and other courts of last resort have
held that if the companies have led the other party,
to his prejudice, to his expense, to understand that
such forfeitures, such breaches of warranties and con-
ditions would not be insisted upon, then the companies
would be estopped from asserting such defenses.    But
here the defendant makes no claim of forfeiture of
the contract; on the contrary it is insisting upon the

contract itself and insisting that by its terms it did not insure the deceased when engaged in military services in time of war. To apply the doctrine of estoppel and waiver here would make this contract of insurance cover a loss it never covered by its terms, to create a liability not created by the contract and never assumed by the defendant under the terms of the policy. In other words, by invoking the doctrine of estoppel and waiver it is sought to bring into existence a contract not made by the parties, to create a liability contrary to the express provisions of the contract the parties did make. The supreme court of Wisconsin in the case of *McCoy* v. *Relief Ass'n,* 92 Wis. 577 (66 N. W. 697, 47 L. R. A. 681), had this precise question before it. By the terms of the policy the company was not liable where the death occurred by suicide. The insured committed suicide. But it was insisted that the company by its acts was estopped from asserting such defense to the action. The answer to such contention was there so well stated that we adopt it as applicable to the instant case. Speaking through Mr. Justice Marshall, the court there said:

"On this branch of the case much learning is displayed, and the general subject of waiver and estoppel in cases of forfeitures by breaches of conditions in contracts of insurance is ably discussed in respondent's brief in support of the contention that appellant is estopped from insisting upon a forfeiture in this case; but we are unable to see how the settled rules under which it is held that a forfeiture or condition of forfeiture may be waived applies here. What is insisted upon is not really the waiver of a forfeiture, or an equitable estoppel against insisting upon a condition of the policy, the violation of which would otherwise work a forfeiture. It is a misuse of the term to so speak of the loss of benefits under the certificate in question. What is here sought is not to prevent a forfeiture, but to make a new contract; to radically change the terms of the certificate so as to cover death by suicide, when by its terms that is expressly ex-

cluded from the contract. We do not understand that the doctrine of estoppel or waiver goes that far. After a loss accrues, an insurance company may, by its conduct, waive a forfeiture; or by some act before such loss it may induce the insured to do or not to do some act contrary to the stipulations of the policy, and thereby be estopped from setting up such violations as a forfeiture; but such conduct, though in conflict with the terms of the contract of insurance and with the knowledge of the insured and relied upon by him, will not have the effect to broaden out such contract so as to cover additional objects of insurance or causes of loss."

6. It was clearly within the discretion of the trial court to permit defendant to amend its pleadings by adding a notice under the plea of the general issue. Section 12478, 3 Comp. Laws 1915; *Sweeney* v. *Insurance Co., supra.*

The judgment will be affirmed.

MOORE, C. J., and STEERE, BROOKE, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.