*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHRISTOPHER CARTER,

Plaintiff-Appellee,

UNPUBLISHED
May 12, 2022

v

No. 356556
Washtenaw Circuit Court
LC No. 20-000467-NF

OWNERS INSURANCE COMPANY, doing
business as AUTO-OWNERS INSURANCE
COMPANY,

Defendant-Appellant.

Before: LETICA, P.J., and MARKEY and O'BRIEN, JJ.

PER CURIAM.

In this interlocutory appeal, defendant appeals by leave granted[1] the trial court's order denying defendant's motion for summary disposition. We reverse and remand to the trial court to enter summary disposition in favor of defendant.

## I. BACKGROUND

This case arises from a May 31, 2019 accident involving plaintiff and non-party Michael Ragland. Ragland's vehicle struck plaintiff while he was traveling through a crosswalk on an electric scooter. Plaintiff became stuck under Ragland's vehicle, and he had to be transported by ambulance to the hospital for a number of injuries.

Plaintiff's father, who lives in Ohio, had an insurance policy with defendant that was sold by an Ohio-based broker. Following the accident, plaintiff notified defendant of his injuries arising from the accident. At the time of the accident, plaintiff was a college student attending Wayne State University and maintained an apartment in Detroit. After notifying defendant of the accident, plaintiff's counsel informed defendant: "[Plaintiff] is actually a Michigan resident because he lives

---

[1] *Carter v Owners Ins Co*, unpublished order of the Court of Appeals, entered May 21, 2021 (Docket No. 356556).

-1-

here most of the time." Defendant then sent plaintiff a letter stating that it was not responsible for personal injury protection (PIP) benefits to plaintiff because "[plaintiff] is not a named insured on" his father's policy "nor is he a . . . domiciled relative of our named insured," i.e. plaintiff's father. The letter informed plaintiff that he could still be eligible for PIP benefits from Ragland's insurer, Farm Bureau Insurance Company, and defendant instructed plaintiff to inform it if Farm Bureau rejected his claim for benefits. Plaintiff subsequently filed a claim for PIP benefits with both Farm Bureau and defendant, requesting the same services. Nearly a year later, after not receiving his requested benefits, plaintiff filed the instant complaint for payment of PIP benefits against defendant but not Farm Bureau.

Eventually, defendant moved for summary disposition, arguing that, under MCL 500.3163(1)[2] of the no-fault act, it was only responsible for the payment of plaintiff's PIP benefits if the injuries suffered by plaintiff, as a nonresident of Michigan, arose out of his use of a motor vehicle as a motor vehicle. According to defendant, because plaintiff's injuries did not arise out of his use of a motor vehicle as a motor vehicle, it was not responsible for the payment of his PIP benefits. In making this argument, defendant conceded that, contrary to statements in its initial denial letter, plaintiff was a domiciled relative under his father's policy, but argued that it was still not responsible for payment of plaintiff's PIP benefits—Farm Bureau was.

In response, plaintiff argued that MCL 500.3163(1) required defendant to insure plaintiff because "there was a motor vehicle involved in the accident that struck [p]laintiff." Even if that was incorrect, plaintiff argued, defendant was estopped under the "mend-the-hold" doctrine from now raising MCL 500.3163(1) as a defense because defendant never before raised the inapplicability of that statute as a reason to deny coverage. The only reason defendant gave for denying benefits was that plaintiff was not a domiciled relative of the named insured.

At a hearing on defendant's motion, the trial court agreed with plaintiff and denied defendant's motion for summary disposition. The court held that defendant's argument under MCL 500.3163(1) did not apply to the present case "where the . . . injured person is a pedestrian." Alternatively, the trial court denied the motion because plaintiff detrimentally relied on defendant's assertion that plaintiff was not a domiciled relative of the named insured. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo motions for summary disposition. *Nuculovic v Hill*, 287 Mich App 58, 61; 783 NW2d 124 (2010). Defendant moved for summary disposition under MCR 2.116(C)(8) and (10). As explained by our Supreme Court:

---

[2] The accident at issue occurred before amendments to the no-fault act became effective on June 11, 2019. 2019 PA 21. Even though plaintiff did not file the complaint until after the amendments to the no-fault act became effective, the preamendment version of the no-fault act governs this action, so our references to the no-fault act are to the preamendment version. See *George v Allstate Ins Co*, 329 Mich App 448, 451 n 3; 942 NW2d 628 (2019).

-2-

A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. When deciding a motion brought under this section, a court considers only the pleadings. [*Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999) (quotation marks and citations omitted).]

By contrast:

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Id*. at 120.]

"Issues of statutory interpretation are questions of law that this Court reviews de novo." *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012). "The interpretation and applicability of a common-law doctrine is also a question that is reviewed de novo." *Tkachik v Mandeville*, 487 Mich 38, 45; 790 NW2d 260 (2010).

## III. ORDER OF PRIORITY

Defendant first argues the trial court's ruling with respect to MCL 500.3163(1) was error. We agree.

Michigan's no-fault act articulates the priority of insurers responsible for an injured party's PIP benefits. See *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 254-255; 819 NW2d 68 (2012). Generally, a person who suffers personal injury arising from a motor vehicle accident in Michigan must look first to their own policy issued under the no-fault act, or to the policy of a relative domiciled in the same household issued under the no-fault act, for payment of PIP benefits. MCL 500.3114(1); MCL 500.3101. The parties agree that plaintiff was domiciled with his father in Ohio at the time of the accident, that his father had an Ohio-based policy with defendant, and that plaintiff was a covered party under that policy. In other words, the parties agree that plaintiff was a nonresident insured by an out-of-state insurer, defendant.

Despite this, defendant could still be required to pay Michigan no-fault benefits to plaintiff for the motor vehicle accident in Michigan under MCL 500.3136. See *Liberty Mut Ins Co v Michigan Catastrophic Claims Ass'n*, 248 Mich App 35, 40; 638 NW2d 155 (2001) (explaining that under MCL 500.3163, an out-of-state insurer can be "required to pay Michigan PIP benefits to their out-of-state resident insureds in the event of a motor vehicle accident occurring in Michigan"). See also *Tevis v Amex Assurance Co*, 283 Mich App 76, 84; 770 NW2d 16 (2009). As relevant here, the statute states:

An insurer authorized to transact automobile liability insurance and personal and property protection insurance in this state shall file and maintain a written certification that any accidental bodily injury or property damage occurring in this state arising from the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle by an out-of-state resident who is insured under its automobile liability insurance policies, is subject to the personal and property protection insurance system under this act. [MCL 500.3163(1).]

Interpreting this statute, this Court has explained that the following three conditions must be met for coverage to be extended under MCL 500.3163(1):

(1) [the insurer] is certified in Michigan, (2) there exists an automobile liability policy between the nonresident and the certified carrier, and (3) there is a sufficient causal relationship between the nonresident's injuries and the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle. [*Goldstein v Progressive Cas Ins Co*, 218 Mich App 105, 109; 553 NW2d 353 (1996). See also *Transp Ins Co v Home Ins Co*, 134 Mich App 645, 651; 352 NW2d 701 (1984).]

The first two conditions are undisputed in this case: defendant is an out-of-state insurer that possessed a certification in Michigan, and there existed an automotive policy issued by defendant covering plaintiff. In the trial court, the disagreement arose over the third condition—whether there was a sufficient causal relationship between plaintiff's injuries and "his . . . ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." *Id*.[3]

Under the plain language of the statute, the out-of-state insurer is liable for Michigan PIP benefits under no-fault act only if the nonresident's injuries arose from "the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle *by* [the] out-of-state resident." MCL 500.3163(1) (emphasis added). There is no dispute that plaintiff here was doing none of those things—everyone agrees that he was a pedestrian when he was hit by Ragland's vehicle. Because plaintiff's injuries did not arise from his "ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle," defendant was not obliged under MCL 500.3163(1) to cover plaintiff's PIP expenses, and the trial court erred when it concluded differently.[4]

---

[3] Plaintiff does not appear to take a position on this issue on appeal, and instead focuses solely on whether defendant was estopped from asserting that MCL 500.3163(1) did not apply to this case under mend-the-hold doctrine, which we address in the next section of this opinion.

[4] In reaching its conclusion, the trial court reasoned that the statute "doesn't even apply in this case" because the "injured person [was] a pedestrian." This reasoning is virtually the same as ours, yet the trial court ruled that this interpretation somehow obliged defendant to cover plaintiff's PIP benefits. Defendant reasonably suggests that the trial court may have been interpreting the current version of MCL 500.3163(1), which differs from the pre-amendment version applicable to this case. We refrain from speculating about the source of the lower court's error, and merely note that its reading of the statute, and its conclusion that the statute does not apply, is the same as ours.

## IV. ESTOPPEL

Defendant next contends that the trial court improperly applied the "mend-the-hold" doctrine to hold defendant liable for plaintiff's claim. We agree.

Our Supreme Court explained the mend-the-hold doctrine as follows:

> Where a party gives a reason for his conduct and decision touching any thing involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estoped from doing it by a settled principle of law. [*CE Tackels, Inc v Fantin*, 341 Mich 119, 124; 67 NW2d 71 (1954) (quotation marks and citation omitted).]

See also *Bartlett Investments Inc v Certain Underwriters at Lloyd's London*, 319 Mich App 54, 58; 899 NW2d 761 (2017) (citation omitted) (explaining that insurers should "apprise the insured of all of the defenses it intends to rely upon, and its failure to do so is . . . a waiver, and estops it from maintaining any defenses to an action on the policy other than those of which it has thus given notice").

The mend-the-hold doctrine has also been applied in the insurance context:

> This court has many times held, and it must be accepted as the settled law of this state, that, when a loss under an insurance policy has occurred and payment refused for reasons stated, good faith requires that the company shall fully apprise the insured of all the defenses it intends to rely upon, and its failure to do so is, in legal effect, a waiver, and estops it from maintaining any defenses to an action on the policy other than those of which it has thus given notice. [*Smith v Grange Mut Fire Ins Co of Mich*, 234 Mich 119, 122-123; 208 NW 145 (1926).]

Stated differently, "once an insurance company has denied coverage to an insured and stated its defenses, the company has waived or is estopped from raising new defenses." *South Macomb Disposal Auth v American Ins Co*, 225 Mich App 635, 695; 572 NW2d 686 (1997) (quotation marks and citation omitted).[5]

---

[5] In the context of the mend-the-hold doctrine, "waiver" and "estoppel" are oftentimes used interchangeably, but they are different. See *Bartlett Investments Inc*, 319 Mich App at 60. Waiver is the voluntary and intentional relinquishment of a known right, *Walters v Nadell*, 481 Mich 377, 384 n 14; 751 NW2d 431, 435 (2008), and may arise from a unilateral, affirmative act by the insurer, see *Ruddock v Detroit Life Ins Co*, 209 Mich 638, 655; 177 NW 242 (1920) (explaining that, "[a]fter a loss accrues, an insurance company may, by its conduct, waive" a defense) (quotation marks and citation omitted). Estoppel, on the other hand, arises when one rightfully but detrimentally relies on the acts, representations, or omissions of another. *Schudlich v Yankee*, 272 Mich 482, 486; 262 NW 395 (1935). Thus, if an insurer "by some act . . . induce[s] the insured to do or not to do some act contrary to the stipulations of the policy," the insurer can be estopped

The application of the mend-the-hold doctrine is limited, however. As this Court explained in *Smit v State Farm Mut Auto Ins Co*, 207 Mich App 674, 680; 525 NW2d 528 (1994):

> [T]he Supreme Court limited the application of waiver and estoppel in *Ruddock v Detroit Life Ins Co*, 209 Mich 638; 177 NW 242 (1920). In that case, the Court explained that the cases applying the "doctrine of waiver and estoppel" had primarily been ones that involved the insurer's assertion that the contract had been forfeited because of noncompliance with conditions of the contract. The Court distinguished those cases and held that waiver and estoppel are not available where their application would result in broadening the coverage of a policy, such that it would "cover a loss it never covered by its terms . . . [and] create a liability contrary to the express provisions of the contract the parties did make." *Id*. at 654. [Footnotes omitted.[6]]

See also *Kirschner v Process Design Assoc, Inc*, 459 Mich 587, 593-594; 592 NW2d 707 (1999) ("The application of waiver and estoppel is limited, and, usually, the doctrines will not be applied to broaden the coverage of a policy to protect the insured against risks that were not included in the policy or that were expressly excluded from the policy."); *South Macomb Disposal Auth*, 225 Mich App at 695 (explaining that the mend-the-hold "doctrine may not be used to broaden policy

---

from asserting the failure to do or not do that act as a defense. *Ruddock*, 209 Mich at 655 (quotation marks and citation omitted). The issue here is not one of waiver, but one of estoppel; plaintiff argues that he reasonably and detrimentally relied on defendant's initially-stated reason for denying his claim, and so defendant should not be allowed to now assert a different reason for denying his claim.

[6] The *Ruddock* Court explained its reasoning in more detail as follows:

> The cases where the doctrine of waiver, or estoppel, has been applied have largely been cases where the insurance companies have relied on a forfeiture of the contract, upon breaches of the warranties and conditions to work such forfeitures; and in many such cases this court and other courts of last resort have held that if the companies have led the other party, to his prejudice, to his expense, to understand that such forfeitures, such breached [sic] of warranties and conditions, would not be insisted upon, then the companies would be estopped from asserting such defenses. But here the defendant makes no claim of forfeiture of the contract; on the contrary, it is insisting upon the contract itself, and insisting that by its terms it did not insure the [claimed loss]. To apply the doctrine of estoppel and waiver here would make this contract of insurance cover a loss it never covered by its terms, to create a liability not created by the contract and never assumed by the defendant under the terms of the policy. In other words, by invoking the doctrine of estoppel and waiver it is sought to bring into existence a contract not made by the parties, to create a liability contrary to the express provisions of the contract the parties did make. [*Ruddock*, 209 Mich at 653-654.]

coverage to protect an insured against risks not included in the policy or expressly excluded from the policy").

Despite *Ruddock* and its progeny, estoppel can be used "to bring within coverage risks not covered by the policy terms" in limited circumstances. *Lee v Evergreen Regency Co-op & Mgt Sys, Inc*, 151 Mich App 281, 286; 390 NW2d 183 (1986). As explained in *Lee*:

> The first class involves companies which have rejected claims of coverage and declined to defend their insureds in the underlying litigation. In these instances, the Court has held that the insurance company cannot later raise issues that were or should have been raised in the underlying action. . . .
>
> The second class of cases allowing the limits of a policy to be expanded by estoppel or waiver . . . involves instances where the inequity of forcing the insurer to pay on a risk for which it never collected premiums is outweighed by the inequity suffered by the insured because of the insurance company's actions. The insurance company has either misrepresented the terms of the policy to the insured or defended the insured without reserving the right to deny coverage. [*Id.* at 286-287 (citations omitted).[7]]

In this case, plaintiff's requested PIP benefits would not be available under the defendant's out-of-state policy that insures plaintiff, and the requirements of MCL 500.3163(1)—the statute that provides when an out-of-state insured can be required to pay Michigan no-fault benefits to a nonresident insured—were not met. Plaintiff, however, is asking for defendant to be estopped from asserting a basis for nonliability other than the reason given in its initial denial letter. That is, plaintiff is asking that defendant be estopped from arguing that the requirements of MCL 500.3163 were not met because that was not defendant's basis for denying liability in its initial denial letter. This would, in effect, broaden the coverage of defendant's policy, "such that it would 'cover a loss it never covered by its terms . . . [and] create a liability contrary to the express provisions of the contract the parties did make.' " *Smit*, 207 Mich App at 680, quoting *Ruddock*, 209 Mich at 654. In order for estoppel to be used in this way—"to bring within coverage risks not covered by the policy terms," *Lee*, 151 Mich App at 286—this case must fall into one of the exceptions to the rule from *Ruddock* barring insurance by estoppel.

Again, this Court in *Lee* discussed two "classes of cases" that fall outside the rule from *Ruddock*. This case clearly does not fall into the first class of cases—there is no underlying action in which defendant could have raised the arguments now at issue. Indeed, plaintiff does not maintain otherwise. Instead, plaintiff contends only that this case falls into the second class of cases. Yet this case clearly does not fall within that class as outlined in *Lee*—plaintiff does not allege that defendant misrepresented the terms of the policy, nor that it defended plaintiff without

---

[7] Even though *Lee* is not strictly binding because it was decided before November 1, 1990, see MCR 7.215(J)(1), this portion of *Lee* is clearly still good law because it was reaffirmed by this Court after November 1, 1990, in *Smit*, 207 Mich App at 680-681, and it was cited approvingly by our Supreme Court in *Kirschner*, 459 Mich at 594-595.

reserving the right to deny coverage. See *id.* at 287. Assuming that this alone does not defeat plaintiff's arguments, his arguments are otherwise unpersuasive. In order to establish that estoppel can be applied to broaden defendant's coverage under the policy, plaintiff needs to establish that he was "prejudiced by [defendant's] belated assertion" of a new reason for why coverage was purportedly excluded. *Smit*, 207 Mich App at 683-684.[8]

Plaintiff argues that he will be prejudiced if defendant is able to raise this belated argument for non-coverage because, if defendant is found not liable, plaintiff will be unable to collect any of the PIP benefits to which he is statutorily entitled from any other insurers as those claims would be barred by the one-year-back rule. This, however, is the result of plaintiff's decision to name only defendant in this action, and is not related to defendant's belated argument under MCL 500.3163.

Plaintiff counters that when he named only defendant as a party to this suit, he did so in reliance on defendant's stated reason for denying his claim in the initial denial letter. Accepting this as true, plaintiff was simply not justified in relying on defendant's denial letter to file his complaint against defendant only. The letter in no way suggested that defendant was the only insurer possibly liable for plaintiff's PIP benefits. To the contrary, the letter explicitly directed plaintiff to the appropriate insurer to cover his claim—Ragland's insurer, Farm Bureau. Plaintiff alone is responsible for his decision to name only defendant in this action. To any extent that plaintiff relied on defendant's initial denial letter in naming only defendant as a party to this suit, the reliance was not justifiable. Accord *Lee*, 151 Mich App at 288 (holding that the plaintiff's case did not fall into the "second class of cases," and thus estoppel did not apply, because the "plaintiff's reliance on Lexington's denial letter was not justifiable").[9]

Plaintiff further argues that defendant could have raised its MCL 500.3163 argument sooner. This argument is unconvincing as well. At most, defendant's failure to raise the defense sooner left plaintiff with the false impression that he may be able to collect benefits from defendant if he proved that he was a domiciled relative of the named insured. Yet this could not reasonably induce plaintiff to forgo preserving his rights against another potentially liable insurer like Farm Bureau. In short, the decision to not name Farm Bureau as a defendant was plaintiff's alone, and no act or omission by defendant induced it.

Based on the above, we conclude that this case does not present an instance in which estoppel can be used to bring within coverage risks not covered by the policy terms because defendant's belated argument related to MCL 500.3163 did not prejudice plaintiff. Plaintiff was

---

[8] This differs from a situation in which it is alleged that a defendant waived a defense—in those instances, a plaintiff need not establish prejudice. See *Bartlett Investments Inc*, 319 Mich App at 59-61.

[9] We also note that the reason that defendant gave in that denial letter was based on a misrepresentation by plaintiff's counsel that plaintiff was domiciled in Michigan, and there is nothing in the record to suggest that plaintiff or someone on plaintiff's behalf responded to the denial letter to correct defendant's misunderstanding of where plaintiff was domiciled or otherwise contacted defendant to correct plaintiff's counsel's misrepresentation.

prejudiced not by defendant's belated argument under MCL 500.3163 but by his decision to not name Farm Bureau as a defendant despite being informed by defendant that Farm Bureau was the insurer liable for his claim. Accordingly, we apply the holding of *Ruddock* and its progeny to conclude that the trial court erred as a matter of law in employing principles of waiver and estoppel to expand defendant's insurance coverage under the policy at issue.

Reversed and remanded to the trial court to enter summary disposition in favor of defendant.

/s/ Anica Letica
/s/ Jane E. Markey
/s/ Colleen A. O'Brien