30262. LIFE & CASUALTY INSURANCE CO. *v.* McLEOD.

DECIDED NOVEMBER 20, 1943.

*Franklin & Eberhardt,* for plaintiff in error.

*Hamilton Burch,* contra.

SUTTON, J. (After stating the above facts.) Under the provisions of the policy in the present case, the insured was allowed to serve in the army or navy of the United States; but in time of actual war, it was required that a written permit be obtained for such service and an extra premium paid; and in case of the death of the insured while enrolled in such service in time of war without having secured the written permission of the company, the company's liability was restricted to the net reserve on the policy. In the case of *Mattox* v. *New England Mutual Life Insurance Co., 25 Ga. App.* 311 (103 S. E. 180), where the policy contained a provision that, "I further agree that said policy shall be void if within five years from its date I shall engage in military service in time of war without the written consent of the company previously obtained," it was held that the burden was upon the insured to notify the company of his military service and obtain the permit; and that where he died while in the military service without having obtained the permit required by the policy, the company was not liable on the policy even though it had retained the premium notes given by the insured for the policy. In the case of *Railey* v. *United Life & Accident Insurance Co., 26 Ga. App.* 269 (106 S. E. 203),

it was held: "The provisions of a life-insurance policy exempting the insurer from liability for death occasioned by the insured engaging in military or naval service in time of war unless a written permit shall be issued by the company are not void as against public policy; and this is so even where the insured is drafted into the service. . . Nor was the retention by the company of an unearned portion of the first premium, with knowledge of the fact that the insured was engaged in the military service of his government in time of war, sufficient to constitute such a waiver." In the case of *Johnson* v. *Mutual Life Insurance Co.,* 154 *Ga.* 653, 656 (115 S. E. 14), the Supreme Court, in discussing the validity and construction of "war clauses" in policies of life insurance, said: "Provisions in policies of life insurance, that the insurer does not assume risk of death which shall occur while the insured is engaged in military service, or will not be liable for such death, have been held to exempt the insurer from liability, notwithstanding the fact that death did not result from any hazard peculiar to such service. Coxe *v.* Employers' Liability Assur. Cor., 2 K. B. 629; Ruddock *v.* Detroit L. Ins. Co., 209 Mich. 638 (177 N. W. 242); Olson *v.* Grand Lodge (N. D.) 184 N. W. 7, 15 A. L. R. 1270; Huntington *v.* F. R. A., 173 Wis. 582 (181 N. W. 819); La Rue *v.* Insurance Co., 68 Kan. 539 (75 Pac. 494); Miller *v.* Ill. Bankers' Life Asso., 138 Ark. 442 (212 S. W. 310, 7 A. L. R. 378); Field *v.* Western L. Indemnity Co. (Tex. Civ. App.), 227 S. W. 530; Nowlan *v.* Guardian L. Ins. Co., 88 W. Va. 563 (107 S. E. 177); Slaughter *v.* Protective League L. Ins. Co., 205 Mo. App. 352 (223 S. W. 819); Malone *v.* State L. Ins. Co., 202 Mo. App. 499 (213 S. W. 877); Reid *v.* Am. Nat. Assur. Co., 204 Mo. App. 643 (218 S. W. 957). In such cases the status of the insured, and not the cause of death, is the ground upon which the exemption of the insurer from liability stands; and these and like authorities hold that such exemption exists whether death occurs from natural causes wholly disconnected from the hazards of war, or from such hazards. Under such provisions, when the insured is engaged in military service, whether voluntary or involuntary, and he dies in such service, from any cause, these authorities hold that there can not be any recovery."

The language used in the policies in the Georgia cases just above referred to, with reference to restricting liability on account of

military service by the insured, is different from that used in the policy in the present case, but what is said by the courts in the decisions in those cases shed light on the questions here involved. It will be seen from an examination of the annotation of authorities on war clauses in insurance policies appearing in 137 A. L. R. 1263 et seq., that it depends on the wording of the policy in each case whether the mere status of the insured as a member of the military or naval service would be sufficient to make operative the provisions in a policy limiting the liability of the insurance company, or whether the causation between the insured's service in the army or navy and his subsequent death would have to be established.

Under the express terms of the policy in the present case, the status of the insured at the time of his death was made the ground of restricting the liability of the company. If the insured was enrolled in either military or naval service at the time of his death without having obtained the written permission of the company for such service, the liability of the company was to be restricted to the net reserve on the policy. "While we recognize the rule that a policy of insurance must be construed most strongly against the insurer, still the words of the policy must be given the meaning which they ordinarily bear; and where it is manifest that it was the intention of the insurer that liability should attach only in given circumstances, the law will uphold the contract according to its true intent and import." *Wheeler* v. *Fidelity & Casualty Co.,* 129 *Ga.* 237, 240 (58 S. E. 709). "Where the language [of the insurance contract] is unambiguous and but one reasonable construction of the contract is possible, the court must expound it as made." *Calo* v. *Ætna Life Ins. Co.,* 164 *Ga.* 392, 398 (138 S. E. 787). In the case of *Reese* v. *Fidelity Mutual Life Association,* 111 *Ga.* 482, 485 (36 S. E. 637), it was held: "The contract as expressed in the application and the policy established the respective rights and obligations of the parties, and this court has no power to alter its provisions and to declare a liability under a state of facts which the parties never agreed should fix it." In the present case, the language used in the policy is plain and unambiguous, and provided that: "Should the insured die while enrolled in such [military or naval] service in war time without such permit, the company's liability will be restricted to the net reserve on this policy;" and under the facts of this case it is admitted that "the insured . . died

while enrolled in said service during actual war . . without ever having obtained such permit." It is contended by the defendant in error that because the insured was at home on leave or furlough the provisions of the policy with respect to military and naval service do not apply. This contention can not be sustained, because the insured was still enrolled in the naval service at the time of his death. The fact that he was granted a furlough or leave of absence did not remove his name from the roll of the navy, but merely permitted him, while still in the naval service, to absent himself for a certain time from his station. The fact that he came to visit his parents near Valdosta, Georgia, did not change his status as a sailor of the United States Navy. He was in Georgia with the permission and consent of the naval authorities under a leave of absence granted him for a certain limited time; but his status as a sailor was not changed. He was still subject to the jurisdiction of the naval authorities, and was entitled to all of the benefits of the soldiers and sailors civil relief acts. At the time of his death, he was still enrolled in the naval service in war time, although he was temporarily at home on a furlough. While he may not have been subject to the hazards of naval service while on leave, his status as a sailor remained unchanged; and under the express provisions of the policy, his status is made the ground for the restriction of liability of the company, and not the risks or hazard of the insured at the time of his death.

The fact that the local agents of the defendant collected the premiums provided for in the insurance policy, with the knowledge that the insured had entered the naval service of the United States in time of war, and had transmitted the premiums to the defendant company without notifying the home office of the defendant, or any officer or agent thereof, of his entry into the naval service of the United States in time of actual war, until after the death of the insured, did not amount to a waiver of the provision in the policy limiting the liability of the defendant to the net reserve of the policy under the conditions as stipulated in the policy. *Sovereign Camp Woodmen of the World* v. *Ricks,* 26 *Ga. App.* 374 (106 S. E. 185); *Sovereign Camp Woodmen of the World* v. *Griffin,* 30 *Ga. App.* 217 (117 S. E. 261). See in this connection, *New York Life Insurance Co.* v. *Patten,* 151 *Ga.* 185 (106 S. E. 183); *Lippman* v. *Ætna Insurance Co.,* 108 *Ga.* 391 (33 S. E. 897, 75 Am. St. R. 62).

As above stated, it is provided in the policy: "No accidental death benefit will be paid if the death of the insured is the result of self-destruction, whether sane or insane, nor if death is caused or contributed to, directly or indirectly, or wholly or partially by disease, or by bodily or mental infirmity, nor if death results from bodily injuries sustained while participating in aviation or aeronautics as a passenger or otherwise, or while the insured is in military or naval service in time of war." It was admitted that at the time of the death of the insured he was in the naval service of the United States in time of war. In these circumstances the defendant was not liable under the accidental-death benefit feature of the policy.

It was admitted that at the time of the death of the insured the amount of the net reserve of the policy was $50. Under the provisions of the policy, and the agreed statement of facts, the plaintiff was entitled to recover only the net reserve of the policy, without costs, as that amount had been tendered to the plaintiff before the suit was filed.

Under the facts of this case, it appears that the defendant, prior to the commencement of the action, offered to pay the plaintiff the full amount to which the plaintiff was entitled under the provisions of the policy, and that the plaintiff refused to accept said sum. There was no evidence of bad faith on the part of the company, nor a refusal to pay the amount due under the provisions of the policy, and the judgment in favor of the plaintiff against the defendant for attorney's fees was unauthorized. Code, § 56-706.

Therefore the judgment is affirmed, with direction that the judgment be written down to the sum of $50, the amount of the net reserve on the policy. The costs are taxed against the defendant in error.

*Judgment affirmed, with direction. Stephens, P. J., and Felton, J., concur.*