[S. F. No. 17132. In Bank. Apr. 9, 1946.]

GEORGE A. COIT, as Administrator, etc., Appellant, v. JEFFERSON STANDARD LIFE INSURANCE COMPANY (a Corporation), Respondent.

2

H. F. Chadbourne and Anthony S. Devoto for Appellant.

Wm. H. Keesling and Keesling & Keil for Respondent.

SCHAUER, J.—Plaintiff brought this action on a contract of life insurance to recover $2,500, the face amount of the policy. Judgment was for $71.48, the amount of premiums paid plus interest. Plaintiff appealed. He contends that the trial court incorrectly interpreted a clause of the policy entitled "Aviation and War Risk Exclusion Rider." After decision by the District Court of Appeal, First Appellate District, Division Two, affirming the judgment this court granted a hearing. We have concluded that the opinion of the District Court of Appeal, written by Mr. Justice Goodell, correctly disposes of the cause. We therefore adopt such opinion with indicated deletions and additions as follows:

"[ ] On January 19, 1942, Charles T. Parks, then a sergeant in the United States Army, made application to the respondent for insurance in the sum of $2,500. On February 1, 1942, the policy was issued with the insured's wife, Jean M. Parks, named as beneficiary. On October 22, 1942, while serving with troops, the insured died in an army hospital in Alaska of an embolism following an appendectomy. On December 6, 1942, the insured's wife died. The insurer made a tender of $71.48, claiming that under the policy's war risk exclusion rider no more than that was due. The tender was rejected and the administrator of the beneficiary brought this action. The prayer of the complaint was for the reformation of the insurance contract and for $2,500, with interest, but at the trial the pursuit of the remedy of reformation was abandoned and the plaintiff stood, and now stands, on the policy as issued.

"The rider, which was part of the policy when it was issued, [ ] [reads in material part as follows:

'AVIATION AND WAR RISK EXCLUSION RIDER.

'Attached to and Forming Part of Policy No. 758,537, 'Issued on the Life of Charles T. Parks.

'This] policy is issued and accepted upon the express agreement that the liability of the Company shall be limited to the amount specified below if the death of the Insured occurs: . . . (2) From any cause while the Insured is serving outside the states of the United States, the District of Columbia, and Dominion of Canada, in the military, naval or air forces of any country at war (declared or undeclared) or within six months after the termination of such service if death be caused from any wounds, injuries or disease received or suffered while in such service; . . . In event the insured's death should occur under any of the conditions defined above, the Company's liability under this policy shall be a single sum equal to the premiums actually paid on this policy with compound interest at the rate of 3 percent per annum. . . .'

"The trial judge decided that the insured's death from natural causes while serving in Alaska was not a risk assumed by the insurer. The appellant attacks this conclusion and contends that it was the meaning and intent of the contract to insure against death caused by ills common to everyone, whether in the service or not, and that the exclusion or exemption applies only in case of death from a cause connected with war and its hazards and perils. He argues that 'The words "From any cause" when read in connection with the heading of the rider attached to the policy—"Aviation and War Risk Exclusion Rider" mean no more than that the liability of the insurer shall be limited when the death of the insured is occasioned by, incidental to or proximately caused by military activities, and not where it has been due to natural, ordinary or accidental causes.' Further, that such an interpretation is consistent with the universal rule (37 C.J. 546) that where the language of an insurance contract is ambiguous, it is to be construed most strongly against the insurer, who is presumed to have drawn the policy and caused the uncertainty to exist. That rule, of course, is well settled in this state. (14 Cal.Jur. § 24, p. 443; *Bayley* v. *Employers' Liability Assurance Corp.*, 125 Cal. 345, 352 [58 P. 7]; *Clarke* v. *New Amsterdam Casualty Co.*, 180 Cal. 76, 81 [179 P. 195];

*Blackburn* v. *Home Life Ins. Co.*, 19 Cal.2d 226, 229 [120 P. 2d 31].)

"The question is new in this state. A score of cases have been cited by the appellant and several by the respondent, most of which came before the courts of other states after World War I and arose because of deaths from pneumonia during the widespread influenza epidemic in 1918-1919, with a few cases of deaths by accident not caused by the perils of war or combat. It is agreed by both sides and recognized in the decisions that there is a diversity in the holdings, arising not because one group of states follows one line of decision and another group follows another, but because of the difference in the wording of the policies themselves. The cases fall, broadly, into two groups, one holding that the *status* of the insured as a soldier or sailor is determinative, the other that the *cause of death* is determinative. There is unanimity, however, on the rule that ambiguities in the policy are to be resolved in favor of the insured and against the insurer and in most of the cases relied on by the appellant that rule will be found to have played an important part in reaching the decision. (See, generally, 29 Am.Jur., § 911, p. 695; 137 A.L.R. 1263; also A.L.R., vol. 147, p. 1294; vol. 150, p. 1414; vol. 151, p. 1452; and vol. 152, p. 1449.)

"We are satisfied [ ] [that] paragraph 2 [ ] is free from any ambiguity or uncertainty, and that it means precisely what it says. In the first place, it does not attempt to create an *absolute* exemption because of military or naval service *per se*; it sets up only a partial exemption, the limitation being geographical in character. It is only 'while the Insured is serving outside the states of the United States, the District of Columbia, and Dominion of Canada' that the exemption is operative. Even while serving in time of war *within* that area the insured seemingly would be covered whether death results from natural causes or, for instance, from wounds or injuries received in maneuvers while training or in actual combat. This seems to be the plain and natural meaning of the language. Secondly, the use of the words 'From any cause' makes it doubly clear that death from injuries received in combat, or as a consequence of actual warfare, could not possibly have been contemplated as the sole ground of exemption. Those words show a studied attempt to get away from the constricted meaning for which the appellant contends. No broader or more comprehensive

phrase could well have been chosen. Moreover, as will presently appear, these words, 'From any cause' or words of similar import, are not found in any of the policies involved in the authorities relied on by the appellant. Aside, then from whatever light is shed on the present problem by authorities from other jurisdictions, the language, in our opinion, [ ] means just what the trial judge held it to mean, namely, that death 'from *any* cause,' however remote from, or unrelated to, actual hostilities is within the limitation of liability if it occurs under the conditions named.

"The respondent cites and strongly relies on the recent case of *Bending* v. *Metropolitan Life Ins. Co.,* 74 Ohio App. 182 [58 N.E.2d 71], where the clauses in the policy were held to be clear and unambiguous and to make the *status* of the insured *in* the military or naval service, and not his *activities* therein, the ground of exemption. The clauses there read: (a) 'provided . . . that death shall not have resulted from bodily injuries . . . sustained while the insured is in the military or naval service in time of war' and (b) 'the insurance under this . . . contract shall be suspended . . . while the insured is in the military or naval service in time of war.' That case is well reasoned. The language of the policy therein subjected to examination is comparable with that under examination herein (but nowhere nearly so explicit, because of the words herein 'From any cause'). The opinion discusses the entire subject and cites most of the authorities with care and discrimination. For these reasons we adopt the discussion therein of the cases on which the appellant herein chiefly relies. In those cases the insured persons died, while in the service, from causes common to all humans, in most cases from influenza or pneumonia (in a few cases by accident) and in most instances at training camps or other places far removed from combat areas. In the Bending case the court says:

" 'The apparent conflict is due in a great measure to the difference in phraseology of the exemption clauses, but the courts in many of these cases, adhering to the well settled rule that in construing an insurance contract which by reason of ambiguities is capable of two reasonable interpretations, that interpretation will be adopted which is most favorable to the insured, have gone to some length in taking a particular word or phrase in the military clause, construing the same as ambiguous, then resolving that ambiguity as meaning activity of

a military nature and not status, and holding the insurer liable.

" 'One of those words is "engaged" and it occurs in clauses of which the following is typical: "If within five years from date hereof the death of the insured shall occur while engaged in the military or naval service in time of war, without previously having obtained from the company a permit therefor, the company's liability shall be limited. . . ." (*Boatwright* v. *American Life Ins. Co.*, 191 Iowa 253 [180 N.W. 321, 11 A.L.R. 1085].)

" 'The court in that case reasons that the word "engaged" connotes "resulting from" or "in consequence of" etc. Consequently the clause was not intended to exempt the company from liability by reason of the soldier's mere status of being in the military service, but the exemption only applied where death occurred from activities of a purely military nature which were not common to soldiers and civilians alike. In that case the insured died in camp of influenza. To the same effect are the cases of *Benham* v. *American Central Life Ins. Co.*, 1919, 140 Ark. 612, 217 S.W. 462; *Long* v. *St. Joseph Life Ins. Co.*, Mo. App. 1920, 225 S.W. 106; *Rex Health & Accident Ins. Co.* v. *Pettiford*, 1920, 74 Ind. App. 507, 129 N.E. 248; *Myli* v. *American Life Ins. Co. of Des Moines*, 43 N.D. 495, 175 N.W. 631, 11 A.L.R. 1097; *Kelly, Adm'x* v. *Fidelity Mutual Life Ins. Co. of Philadelphia*, 169 Wis. 274, 172 N.W. 152, 4 A.L.R. 845; *Barnett* v. *Merchants' Life Ins. Co.*, 87 Okla. 42, 208 P. 271.

" 'The use of the word "risk" in those clauses has also been used as the basis of the construction of the clause as involving "activities" and not "status." The case of *Atkinson, Adm'r*, v. *Indiana National Life Ins. Co.*, 194 Ind. 563, 143 N.E. 629, 630, is illustrative of this type of construction. The policy there provided: "After one year from the date of issue this policy shall become incontestable if the premiums have been duly paid, except in case of self-destruction within two years, whether sane or insane, and except that military or naval service in time of war without a permit from the company, is a risk not assumed under this policy at any time."

" 'Due to the use of the word "risk" that clause was held to be ambiguous in that it might mean either activities or status and was therefore resolved against the insurer which was held liable for the death of the insured in a motorcycle accident while on leave of absence from duty.'

"Each of the cases discussed in the foregoing quotation is relied on by the appellant herein. In addition thereto he has cited a number of cases most of which fit into the same category (to quote from the Bending case) putting 'emphasis on the phrases "resulting from," "in consequence of," and "active service" in arriving at a similar construction.' Those cases, with parenthetical quotations from their exemption clauses, are as follows: *Gorder* v. *Lincoln National Life Ins. Co.,* 46 N.D. 192 [180 N.W. 514, 11 A.L.R. 1080] ('In consequence of such service'); *Starr* v. *Great American Life Ins. Co.,* 114 Kan. 315 [219 P. 514] ('in consequence of such service'); *Johnson* v. *Mutual Life Ins. Co.,* 154 Ga. 653 [115 S.E. 14] ('as a result of military or naval service in time of war, . . . nor if such death be caused directly or indirectly, wholly or partly, by . . . war, or any act incident thereto'); *Nutt* v. *Security Life Ins. Co.,* 142 Ark. 29 [218 S.W. 675] (military or naval service in time of war are 'risks not assumed'); *Malone* v. *State Life Ins. Co.,* 202 Mo. App. 499 [213 S.W. 877] ('the death of the insured while so engaged . . . as a result of such service'); *Farmers' National Life Ins. Co.* v. *Carman,* 76 Ind. App. 700 [132 N.E. 697], decided, without setting forth any facts, on the authority of the Rex case, *supra*; *Stephan* v. *Prairie Life Ins. Co.,* 113 Neb. 469 [203 N.W. 626] ('If the insured . . . engage in military or naval service in time of war . . . and death shall occur during such engagement or as a result thereof'); *Arendt* v. *North American Life Ins. Co.,* 107 Neb. 716 [187 N.W. 65] ('death occurring in any part of the world and in any occupation, or from any cause, except military or naval service in time of war'); *Illinois Bankers' Life Assn.* v. *Jackson* (2 cases), 88 Okla. 133 [211 P. 508] ('If the insured engages in military or naval service'); *Illinois Bankers' Life Assn.* v. *Davaney,* 102 Okla. 302 [226 P. 101] ('death while in the service in the army or navy of any government in time of war is not a risk covered . . .'). Also *Welts* v. *Connecticut Mutual Life Ins. Co.,* 48 N.Y. 34 [8 Am.Rep. 518], where the policy provided that the insured was not protected against death from any of the casualties or consequences of war or rebellion, or from belligerent forces in any place where he may be. He was a civilian engineer building a bridge for the Union army thirty miles behind the Union lines, and was killed by four hold-up men who were not soldiers in either the Union or Confederate armies. In the cases last cited (just as in the eight cases re-

viewed in the Bending case) a recovery of the full face of the policy was allowed on the theory that the insured's death from causes not related to hostilities, was not within the terms of the policy's exemption.

"The appellant also cites several cases which do not appear to fit into this category. They are: *Railey* v. *United Life & Accident Ins. Co.,* 26 Ga. App. 269 [106 S.E. 203], where the insured, a soldier, was killed in the collision with another troopship of the troopship on which he was being transported to the combat area in Europe. It was held to be squarely within the exemption. *American Nat. Ins. Co.* v. *Turner* (Tex.Civ.App.), 226 S.W. 487, simply involved the question whether the beneficiary could collect attorney fees. The insured, a marine, was killed in battle in France, a risk clearly within the exemption.

"In the Bending case the court says: 'The court in many of the cases above referred to, while holding that the particular clause under consideration was ambiguous and therefore to be construed against the insured [*sic*], specifically recognized the proposition that a clause might be written making status the ground for exemption and it would be valid.' As an example the court quotes from the Myli case, *supra*, where it is said: 'For instance, it might well have been stated, "If within five years from date the insured shall enlist or become inducted into the military or naval service without having obtained a permit therefor" etc., then status would clearly have been the test.' A year later, in the Gorder case, 46 N.D. 192, 195 [180 N.W. 514, 11 A.L.R. 1080], *supra*, Justice Birdzell, the author of the opinion in the Myli case, said: 'There is a vast difference between a death *in* the active military service [citations] and a death *in consequence of such service* [citations].' See, also, *Olson* v. *Grand Lodge,* 48 N.D. 285, 290 [184 N.W. 7, 15 A.L.R. 1270], where the same court discusses the Myli case. In *Long* v. *St. Joseph Life Ins. Co.,* (Mo. App.) 225 S.W. 106 (affirmed (Mo.) 248 S.W. 923), *supra*, the court says: 'The insurance company has the right to decide the kind of contract it will enter into. . . . If it chooses, it can say to the insured: "During the period you are an enlisted soldier or sailor I will not be liable for the insurance, should you die in that period, no matter whether such service caused it or not." ' In *Johnson* v. *Mutual Life Ins. Co.,* 154 Ga. 653, 656 [115 S.E. 14], *supra*, it is said: 'Provisions in policies of life insurance, that the insurer does

not assume risk of death which shall occur while the insured is engaged in military service, . . . have been held to exempt the insurer from liability, notwithstanding the fact that death did not result from any hazard peculiar to such service. [Citations.] . . . Under such provisions, when the insured is engaged in military service . . . and he dies in such service, *from any cause*, these authorities hold that there can not be any recovery. . . . If the insurer had intended that it was not to be liable for this double indemnity if the insured died while in the military service *from any cause whatsoever*, it would have been an easy matter to have written such a stipulation in the policy. Such a provision would have made the insured's status in the military service, at the time he met his death, and not the cause of his death, the ground of the insurer's exemption from liability.' (Emphasis ours.)

"The quotations just given are all taken from cases relied on herein by the appellant.

"A number of authorities which support the decision of the trial court and the position of the respondent herein, construe policies where the language is quite similar to the language employed in the cases upon which the appellant relies. Notably, among such cases, is *Bradshaw* v. *Farmers & Bankers Life Ins. Co.*, 107 Kan. 681 [193 P. 332, 11 A.L.R. 1091] where the limitation was 'If . . . the insured shall engage in military or naval service in time of war, the liability of the company, in event of the death of the insured while so engaged . . . will be limited. . . .' The court held that the *status* of the insured as a member of the armed forces was alone sufficient to bring the exemption into operation. Other cases where an exemption is created if the insured shall *engage in* the military or naval service (or equivalent language is used) are *Huntington* v. *Fraternal etc. Assn.*, 173 Wis. 582 [181 N.W. 819]; *Olson* v. *Grand Lodge*, 48 N.D. 285 [184 N.W. 7, 15 A.L.R. 1270], *supra*; *Field* v. *Western Life Ind. Co.* (Tex. Civ. App.), 227 S.W. 530; *Mattox* v. *New England Mut. Life Ins. Co.*, 25 Ga.App. 311 [103 S.E. 180] and *Sandstedt* v. *American Central Life Ins. Co.*, 109 Wash. 338 [186 P. 1069]. In these cases the courts reached conclusions opposite to those reached in the Benham, Boatwright and Long cases, *supra*, and held that the words 'engage' or 'engaged in' were simply descriptive of the *status* of the insured, and that the insurer's liability was limited. The same result was reached in *Ruddock* v. *Detroit Life Insurance Co.*, 209 Mich.

638 [177 N.W. 242], where the exemption read: 'This policy . . . shall be incontestable . . . except for naval or military service in time of war, without a permit, which are risks not assumed. . . .' And likewise in *Miller* v. *Illinois Bankers Life Assn.*, 138 Ark. 442 [212 S.W. 310, 7 A.L.R. 378] where the language was: '. . . death while in the service in the army or navy of the Government in time of war is not a risk covered. . . .'

"In *McQueen* v. *Sovereign Camp*, 115 S.C. 411 [106 S.E. 32] the exemption read: '. . . In the event the holder of this certificate shall die while serving in any branch of the United States Army or Navy, either as an officer or enlisted man, outside the boundaries of the United States' the liability of the insurer would be limited. This language is closer to that in the policy involved herein than that of any case we have been able to find. It contains also a geographical limitation. The court held the liability was effectively limited.

"In addition to the Bending case the respondent also relies on the recent cases of *Life & Casualty Ins. Co.* v. *McLeod*, 70 Ga.App. 181 [27 S.E.2d 871] and *Lindsey* v. *Life & Casualty Ins. Co.*, 70 Ga.App. 190 [27 S.E.2d 877]. In both cases the clause read: 'Should the insured die while enrolled in such [military or naval] service in war time without such permit, the company's liability will be restricted to the net reserve of this policy.' The clause was held in both cases to preclude a recovery of the face of the policy, and to fasten only limited liability on the insurer.

"From the foregoing discussion it will be seen that the cases on this subject may be grouped about as follows: (1) those holding that language such as 'death in consequence of' or 'death resulting from' military service means that death from natural causes while in the service is not within the exemption; (2) those holding that death 'while engaged in' the service has the same meaning (as group 1); (3) those holding that death 'while engaged in' the service means no more than *while enlisted in*, or *enrolled in*, the armed forces, hence such death, even from natural causes, *is* within the exemption, and (4) those cases where the war risk clause contains no such language as is found in (1), (2) or (3) but simply states the condition, namely, military or naval service.

"The clause in this case (as in the Bending, McLeod, Lindsey and McQueen cases, is in the fourth category.

"It is interesting to note, however, that the third para-

graph in the war risk rider now before the court *does* contain language somewhat similar to that discussed in group (1). That paragraph is designed to limit the insurer's liability if death occurs: ' (3) Within two years after the date of issue of this policy as a result of war (declared or undeclared), or any act incident thereto occurring while the Insured is traveling, residing or stationed outside the states of the United States, the District of Columbia, and the Dominion of Canada.' The words 'as a result of war' and 'any act incident thereto' are in sharp contrast to the language of paragraph 2, here involved, and would indicate that two distinct forms of coverage were intended. [ ]

▋ [It is true, as plaintiff contends, that the policy of insurance is to be read and construed as a whole and, more particularly, that the caption of the rider is to be read and construed with the language of the rider itself. (*Ogburn* v. *Travelers Ins. Co.*, 207 Cal. 50, 52 [276 P. 1004]; *Narver* v. *California State Life Ins. Co.*, 211 Cal. 176 [294 P. 393].) But this argument makes obvious the antistrophe which defeats it: the language of the rider is explicit and clear; reading that language with the caption effectually resolves any ambiguity in the latter. The words "Aviation and War Risk Exclusion Rider" are only the caption of the rider; they are not in themselves an operative provision of the policy; standing alone they do not exclude any risk whatsoever. Thus, unless the operative language in the body of the rider is to be considered the rider will be wholly ineffectual. But if any of the operative language is to be considered it would seem that we must consider all of it. If such operative language were ambiguous the insured would be entitled to a favorable construction of the ambiguity but, as previously observed, such operative language is explicit and clear.]

"The phrase 'From any cause' which [ ] [means] 'without regard to the cause' (see *Bohrnstedt* v. *Travelers Ins. Co.*, 123 Ore. 539 [259 P. 419, 262 P. 938]) [ ] [must be given its unequivocal meaning.] 'Because contracts of insurance are not the result of negotiation and are generally drawn by the insurer, any uncertainties or ambiguities therein are resolved most strongly in favor of the insured. . . . Where there is no ambiguity, however, courts will indulge in no forced construction against the insurer, and the insurance policy, like any other contract, is to be interpreted according to the intention of the parties as expressed in the instrument

in the light of the circumstances surrounding its execution. . . .' (*Blackburn* v. *Home Life Ins. Co.*, 19 Cal.2d 226, 229, *supra.*) [ ]''

For the reasons above stated the judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

I believe that the life insurance policy in the instant case covered the death of the insured. It is conceded that, while the death occurred when the insured was in military service outside the states of the United States, *it was in no way connected with, caused by or the result of that military service or war*. The caption of the rider which requires interpretation states that the rider is a *war risk* exclusion rider. In the body of the rider it is provided, *accepting the construction placed thereon by the majority opinion*, that a death is not covered when it occurs outside the states of the United States while the insured is serving in the military forces. The caption and the clause in the body are *diametrically opposed to each other*; they cannot be harmonized. The words ''war risk'' are not ambiguous. They can mean only one thing, a risk or hazard incident to or the consequence of war—the proximate result of war. Such risks and *those only* are excluded by the express wording of the caption. It may be that in the application of those words to a particular set of facts it will be difficult to ascertain whether the case is or is not within the definition of those words, but that problem, even if it be considered as making the words ambiguous, *is not an ambiguity in language*. Certainly there is no ambiguity in a clear case such as we have here where there can be no claim that there was any connection between the war and the insured's death. Where no relation exists between the death and the war, the death cannot under any definition of ''war risk'' be considered as embraced therein. Turning then to the clause in the body of the rider we find it makes no reference to any *war risk*. It purports to exclude risks which occur (1) at a certain place, and (2) when the insured has a certain status—is in the military service. Neither of those factors necessarily has the remotest connection with the risks connected with or are inherent in war. Hence it purports to make an exclusion which is totally foreign to the caption.

Thus we have two contradictory clauses in an insurance policy. In that situation the clause most favorable to the insured must be held applicable to the case. It is true that some of the other parts of the body of the rider do pertain to war risks, but how can that validate a clause which is clearly outside the scope of a war risk? It is also of importance that the caption is in large type as contrasted with the small type in the body. The insured in taking the policy would naturally assume that the words ''war risk'' in the caption meant what they plainly import, a risk caused by and the result of war. He could assume that risks having no connection with war are not excluded. So to permit him to be misled is contrary to justice and the principles applicable to the interpretation of insurance policies.

The foregoing is to me the turning point of the case, yet the majority opinion devotes only one paragraph to it, stating: ''It is true, as plaintiff contends, that the policy of insurance is to be read and construed as a whole and, more particularly, that the caption of the rider is to be read and construed with the language of the rider itself. (Citations.) But this argument makes obvious the antistrophe which defeats it; the language of the rider is explicit and clear; reading that language with the caption effectually resolves any ambiguity in the latter. The words 'Aviation and War Risk Exclusion Rider' are only the caption of the rider; they are not in themselves an operative provision of the policy; standing alone they do not exclude any risk whatsoever. Thus, unless the operative language in the body of the rider is to be considered the rider will be wholly ineffectual. But if any of the operative language is to be considered it would seem that we must consider all of it. If such operative language were ambiguous the insured would be entitled to a favorable construction of the ambiguity but, as previously observed, such operative language is explicit and clear.'' *It is assumed without discussion that the caption is ambiguous.* It is clearly not ambiguous. Neither is the body of the rider. *They are squarely antagonistic.* So we have two opposing and conflicting provisions, which create an uncertainty or ambiguity as to the nature of the risk excluded. The problem is one of interpretation. Moreover the majority opinion states that the caption is not an operative part of the policy although in the previous sentence it recognizes the rule that it must be construed as part of the policy. (*Ogburn* v. *Travelers Ins. Co.,*

207 Cal. 50, 52 [276 P. 1004] ; *Narver* v. *California State Life Ins. Co.,* 211 Cal. 176 [294 P. 393].) When so used it clearly limits the exclusion to only such risks as are war connected.

There are many cases in which provisions closely analogous to the one in the case at bar have been interpreted in favor of extending coverage to the insured. In *Arendt* v. *North American Life Ins. Co.,* 107 Neb. 716 [187 N.W. 65], the insured was covered for death from any cause "except military or naval service in time of war." Yet a nonmilitary service connected death in time of war was held *not* to be excluded. The policy in *Atkinson* v. *Indiana Nat. Life Ins. Co.,* 194 Ind. 563 [143 N.E. 629], read: "After one year from the date of issue this policy shall become incontestable . . . except that military or naval service in time of war without a permit from the company, is a risk not assumed under this policy at any time; but the legal reserve hereunder will be due and payable in case of death *while* in such service." The court stated: "Appellant contends that the plain meaning of the military clause is that the insurance company does not assume the risks of or incident to military service. Appellee contends that the limitation intended by the military clause is one of the status of the insured at the time of death, and not a limitation as to the cause of death. In support of its contention appellee argues that the words 'military service,' or 'in the military service,' if not modified by some other words, such as the words 'engaged in military service,' or 'in active military service' have uniformly been held to refer to the status of being in the military service, . . . The language of the first part of the sentence of the military limitation before the court has to do with a military service risk, or a risk of military service, or a risk incident to military service, or a risk occasioned by military service. The second part of that part of the sentence relating to military limitation is incompatible with the first part, and, if the position taken by appellee is to be confirmed, it is sufficient in its strength to control the other part of the sentence, thereby defining the first part of the sentence to mean status only, which carried out logically would mean to say, 'The risk of death while in military or naval service in time of war without a permit reduces the liability of the company to the payment to the beneficiary of the legal reserve only under this policy.'

"The possibility of such a construction of the meaning of the military service clause, in the face of a denial of such

construction by the appellee, declares its ambiguity. This very state of conjecture suggests the rule of law, long adhered to, that in construing an insurance contract, which by ambiguities is capable of two reasonable interpretations, that interpretation will be adopted which is most favorable to the insured, and against the insurer.'' Likewise in the case at bar the caption of the rider refers to war *risk*, that is, a risk peculiar to war rather than merely the status of the insured. In *Illinois Bankers' Life Ass'n* v. *Davaney*, 102 Okla. 302 [226 P. 101], the exclusion clause read: ''It is expressly provided that death *while in the service* in the army or navy of any government in time of war is not a risk covered *at any time during* the continuance or reinstatement of this policy of any greater sum that the amounts actually paid to the company herein.'' (Emphasis added.) The insured died of influenza while in the service in time of war. The court in holding the insured was covered relied upon a prior case (*Barnett* v. *Merchants' Life Ins. Co.*, 87 Okla. 42 [208 P. 271]) where the clause excluded those *engaged* in military service stating: ''It is contended that *in the Barnett Case, supra*, this court was dealing with a policy which provided that it was unrestricted as to 'travel, residence, or occupation, except that if at any time the insured shall *engage* in army or naval service in time of war,' etc.

''*It is pointed out that the term 'engage' is not used in the policy in the instant case*; that the exemption here applied when and wherever the insured is in the service of the army or navy. It is true that in the Barnett Case the provision of the policy is 'that if at any time the insured shall engage in army or naval service' and that in the instant case the provision of the policy is, in that respect, 'that death while in the service of the army or navy of any government in time of war is not a risk covered' by the policy, but we are unable to agree with counsel for defendants that the decisions of this court referred to differentiated the provision before the court in those cases from the provision in the case at bar.''

*Smith* v. *Sovereign Camp, W. O. W.*, 204 S.C. 193 [28 S.E. 2d 808], considered a policy reading ''The double indemnity benefits hereby provided shall not be payable—while the member is in the military or naval service in time of war.'' The insured, a member of the military forces, was injured while on a furlough. His beneficiary recovered. In *Young* v. *Life & Casualty Ins. Co. of Tennessee*, 204 S.C. 386 [29 S.E.

2d 482], the exclusion clause stated: "No Accidental Death Benefit will be paid . . . if death results from bodily injuries sustained while . . . the insured is in military or naval service in time of war." The death of the insured, a member of the military forces, unconnected with his services therein, was held *not* to be excluded. The court said: "In the case before us, we think it clear that although the policy contains the word 'enroll' and not 'engage,' it was intended by the parties, insured and insurer, that the failure of the insured to obtain the permit and pay the extra premium would reduce the company's liability only in case his death should result from a risk peculiar to the military service. This view is strengthened by the requirement that an extra premium be paid in the event of military service in time of war. It is evident that an extra hazard was in contemplation of the parties as a possible cause of death, and that for this added risk the Company should be compensated. This added risk, in our view, cannot reasonably be referred to status; it relates to the death of the insured caused by or connected with his military duties as a member of the nation's armed forces. This seems to us to be the natural and obvious reading of the clauses quoted."

It has been held in many cases that where the exclusion clause extends to those "engaged" in military service, a death is not excluded unless it is service connected or the consequence of service. (*Long* v. *St. Joseph Life Ins. Co.* (Mo. App.), 225 S.W. 106; *Nutt* v. *Security Life Ins. Co. of America*, 142 Ark. 29 [218 S.W. 675]; *Benham* v. *American Central Life Ins. Co.*, 140 Ark. 612 [217 S.W. 462]; *Stephan* v. *Prairie Life Ins. Co.*, 113 Neb. 469 [203 N.W. 626]; *Boatwright* v. *American Life Ins. Co.*, 191 Iowa 253 [180 N.W. 321, 11 A.L.R. 1085]; *Myli* v. *American Life Ins. Co.*, 43 N.D. 495 [175 N.W. 631, 11 A.L.R. 1097]; *Farmers' Nat. Life Ins. Co. of America* v. *Carman*, 76 Ind.App. 700 [132 N.E. 697]; *Rex Health & Accident Ins. Co.* v. *Pettiford*, 74 Ind.App. 507 [129 N.E. 248]; *Illinois Bankers' Life Assn.* v. *Jackson*, 88 Okla. 133 [211 P. 508]; *Barnett* v. *Merchants' Life Ins. Co.*, 87 Okla. 42 [208 P. 271].) There are some cases to the contrary but the very fact of the conflict shows the necessity of interpreting the clause favorable to the insured. There is no distinction between "engaged" in military service and "in" military service, the words used in the instant case. A person is occupied or employed (engaged) in military service when he is in the service.

It should be noted that none of the policies in any of the cited cases, which hold the exclusion clause applicable have a war risk caption comparable to the one in the case at bar, that is, "AVIATION AND WAR RISK EXCLUSION RIDER."

It is conceded by respondent that under the interpretation contended for by it, which has been adopted by the majority of this court in the case at bar, the insured was not covered during any of the time he was serving with the armed forces of the United States in Alaska; that is, had he met his death even while on furlough as the result of an accident or cause wholly unconnected with his military service, no recovery could be had under the provisions of the policy here involved. This conclusion must necessarily follow from the interpretation placed upon the war risk exclusion provision by the majority opinion.

Many cases involving the interpretation of war risk exclusion clauses in insurance policies have been reported in the American Law Reports, and reference to the annotations to these cases discloses a great diversity of judicial opinion in the interpretation of clauses of this character. (See, 157 A.L.R. 1448; 156 A.L.R. 1447; 155 A.L.R. 1449; 154 A.L.R. 1446; 153 A.L.R. 1418; 152 A.L.R. 1449; 151 A.L.R. 1452; 150 A.L.R. 1414; 147 A.L.R. 1294; 141 A.L.R. 1510; 140 A.L.R. 1533; 137 A.L.R. 1263; 15 A.L.R. 1280; 11 A.L.R. 1103; 7 A.L.R. 382; 4 A.L.R. 848.) Those courts expressing the more liberal view have allowed recovery in cases like the one now before us where there is a conflict between provisions of the policy which create an uncertainly or ambiguity as to the risks excluded by the policy. Under the interpretation placed on such clauses by the decisions of the courts following the more liberal trend, plaintiff would be entitled to recover in the case at bar. The majority opinion, however, adopts the more conservative view and interprets the conflicting provisions of the policy most strongly against the insured. In my opinion considerations of justice and fairness should compel an interpretation of conflicting provisions of this character most strongly in favor of the insured, and that this court should adopt the liberal view expressed by the courts of other jurisdictions which have allowed recovery in cases of this character. A basic reason in support of this conclusion is that many persons holding policies containing war risk exclusion clauses did not contemplate entering military service at the time such policies were issued to them but were thereafter re-

quired to enter such service as the result of the operation of the National Selective Service Act. Obviously such persons would not scrutinize the war risk clauses upon receipt of their policies, because of the assumption, after reading the caption "AVIATION AND WAR RISK EXCLUSION RIDER" *in large black-faced type*, that such rider limited the liability of the insurance company in cases *only* where death resulted solely from some risk incidental to or connected with war or military service, and for this reason did not read the provisions of the rider which were *printed in very small type*. In other words, such insured had the right to assume that the only risks excluded by the rider were those connected with or incidental to aviation and war. If the rider in the small type had provided that the company would not be liable if the insured's death resulted from an injury received by reason of coming in contact with an aeroplane while engaged in any pursuit connected with aviation or otherwise, could it be said that the insured would not be covered if he was killed as a result of a collision between an automobile in which he was riding and an aeroplane operated by a third person? Obviously any one reading the caption to the rider who was not interested in aviation, and who never intended to have anything to do with aeroplanes, would have the right to assume that the clauses contained in the small type below the caption did not exclude risks which had no connection with aviation; yet, the interpretation placed upon the rider in the case at bar would pervent recovery by the beneficiary of the person killed while riding in the automobile as the result of being struck by an aeroplane. In my opinion the beneficiaries of those who were thus misled should be protected against such an obvious means of deception.

For the foregoing reasons the judgment should be reversed.

Appellant's petition for a rehearing was denied May 6, 1946. Carter, J., voted for a rehearing.