ANGELINA SALADINO, Plaintiff, *v.* PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.

Supreme Court, Special Term, Kings County, December 28, 1946.

*Julius N. Arnstein* and *I. Jonas Speciner* for plaintiff.

*Merwin F. Le Vine* and *Solon Weit* for defendant.

FROESSEL, J.   In an action brought by the beneficiary of a life insurance policy, issued by the defendant herein on the life of one Arthur Saladino, to recover the sum of $5,000 claimed to be payable under the provisions of the policy entitled " Benefit in

Event of Death by Accidental Means as Limited and Defined Herein," plaintiff moves for summary judgment.

The defendant not only opposes plaintiff's motion but requests pursuant to rule 113 of the Rules of Civil Practice, summary judgment in its favor, upon the ground that it appears from the evidentiary facts adduced upon this motion that it is entitled to judgment.

The policy, which is dated March 10, 1943, and on which two semiannual premiums were paid, is for the face amount of $5,000. This face amount was duly paid on or about March 4, 1944, prior to the commencement of this action. The defendant resists merely the payment of the double indemnity benefits of the policy, and it is this feature of the policy alone which is involved in this action.

It appears uncontradicted that at the time that the policy was delivered, the decedent, thirty years of age, was a civilian, about to commence work " as an aircraft maintenance man " with the Ford Company in Detroit. He was thereafter inducted into the armed forces on October 26, 1943. On February 21, 1944, he was killed when a taxicab, operated by a civilian in which he was a passenger for hire, was in collision with an Army truck. Immediately prior to the accident, the decedent had a forty-eight hour pass which at the time of the accident had not expired. He and five other soldiers were in the taxicab en route to Fort Eustis, Virginia, a distance of about one hundred seventy-five miles from Union Station, Washington, D. C., from which they had departed at about 12:15 A.M. He was due in Fort Eustis at 5:45 A.M.

In consideration of a " constant extra premium of $2,60 ", there was included a double indemnity benefit in the event of death by accidental means. Among the conditions and exceptions to the payment of such benefit, was the provision that " No such benefit shall be payable if such death results * * * (d) while a member of the military, naval or air forces of any country at war (declared or undeclared) * * *."

The policy also contains, by rider indorsement thereon, bearing the same date as the policy and annexed thereto and made part thereof at the time it was delivered, certain provisions entitled " War and Aviation Clause." Insofar as pertinent, these provide as follows: " Notwithstanding anything in this Policy to the contrary, it is hereby provided that the liability of the Company shall be the limited benefit defined below: * * * If this Policy contains a provision for a benefit in

**event** of death by accidental means, the conditions and exceptions specified in the Policy are hereby supplemented and amended to provide that no such benefit shall be payable if death results from any cause while the Insured is in the military or naval forces of any country at war.''

The validity of a provision in a life or accident policy entirely releasing the insurer from, or in some way restricting, its liability under the policy because of the connection of the insured with military or naval forces is almost universally recognized, although the validity of a particular clause under the circumstances of a particular case, or in its application to a particular policyholder, has occasionally been denied. '' The primary question in connection with the nature and character of the risks contemplated by the parties to a policy of life or accident insurance containing a provision relating to military service on the part of the insured is whether the parties intended that the provision should be applicable to relieve the insurer from liability, or lessen its liability, merely on the basis of the status of the insured as a member of the nation's armed forces, or, instead, contemplated that, before the provision should be applicable, it must appear that death occurred as a result of the insured's military activities, and was attributable, directly or indirectly, to his participation in military service.'' (137 A. L. R. 1263, 1265, 1268-1269.)

There is no difficulty where the policy is so worded that it is clear that the parties intended that the mere status of the insured, as a member of the armed forces, should be sufficient to make the provision relating to military service operative, and that the insured's death while a member should be enough to relieve the insurer irrespective of whether or not it was attributable to his military activities.

The plaintiff urges that notwithstanding the foregoing conditions and exceptions, the defendant, who received a constant extra premium of $2.60 for the double indemnity accident benefits, is liable herein, inasmuch as the decedent was not engaged in any military activity at the time of the occurrence of the accident which resulted in his death; that in providing for a *constant* extra premium, it was the intention of the parties to the contract that the said premium would cover the intermittent periods when a soldier was not engaged in military activities, when he is at liberty on a pass or on a furlough. To this contention the defendant answers that the policy gave the insured the option to terminate this particular benefit at any time by the following language: '' Upon written request and return of this

Policy for endorsement by the Company, this Benefit will be terminated as of the date to which premiums have been paid hereunder, whereupon the extra premium charged for this Benefit will no longer be payable.''

Thus the defendant contends that while it bound itself irrevocably to pay this double indemnity benefit in a proper case in consideration of the nominal extra premium of $2.60 semiannually, which was included in the entire premium, the insured was given the option of freeing himself of this obligation at any time that he chose. On the other hand, he might continue paying the premiums on the theory (1) that his service in the war would be for a short period, (2) that if he became disabled in the war, he might not thereafter be able to obtain such insurance, and (3) that he would have the advantage of the lesser premium by reason of his age at the time of the commencement of the policy.

The plaintiff has cited no case or any authority in this State or any other jurisdiction to support her position, other than cases which hold that if a policy of insurance is written in such language as to be doubtful and uncertain in its meaning, all ambiguity must be resolved in favor of the policy holder and against the company. Of course that is the law. However, it is equally well settled that a contract of insurance is no different than any other contract (*Drilling* v. *New York Life Ins. Co.*, 234 N. Y. 234, 241), and like other contracts '' are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense.'' (*Johnson* v. *Travelers Insurance Co.*, 269 N. Y. 401, 408.)

A reading of the provisions in question leads to the inevitable conclusion that they are plain and unambiguous and, therefore, the rule of construction urged by the plaintiff as to ambiguous language used in insurance contracts, does not apply. As was stated in *Gearns* v. *Commercial Cable Co.* (293 N. Y. 105, 109): '' ' The construction of a plain contract is for the court. The intention of the parties is found in the language used to express such intention. (*Hartigan* v. *Casualty Co.*, 227 N. Y. 175.) If the court finds as matter of law that the contract is unambiguous, evidence of the intention and acts of the parties plays no part in the decision of the case. Plain and unambiguous words, undisputed facts, leave no question of construction except for the court. The conduct of the parties may fix a meaning to words of doubtful import. It may not change the terms of the contract.' (*Brainard* v. *N. Y. C. R. R. Co.*, 242 N. Y. 125, 133.)''

It is clear from the language used in the conditions and exceptions that the double indemnity accident benefit was not to be paid if death occurred as defined in the policy while the decedent was " a member of the military, naval or air forces of any country at war (declared or undeclared) ", or as stated in the war and aviation clause, if the death " results from *any cause* while the insured is *in* the military or naval forces of any country at war." (Italics mine.) The language used in the policy renders the *status* of the insured in the military service the ground for exemption from liability, and not the particular activity in which the decedent was momentarily engaged at the time of the accident.

Authorities supporting this view throughout the country are numerous and are collated in 137 American Law Reports 1263 *et seq.*, and it is needless to review them here, at length.

In *Bending* v. *Metropolitan Life Ins. Co.* (74 Ohio App. 182), the action was brought upon an accident insurance policy which excepted liability " while the insured is in the military or naval service in time of war." The insured, while on a two-day leave, was accidentally killed by falling out of the window of a hotel. The court, sustaining the position of the insurer, stated (p. 191) : " It is argued that one is not in the military service while on leave of absence. This position is untenable. One is in the military service from the time he takes the oath until he receives his discharge, honorable or otherwise, and the courts have uniformly so held. [Citing cases.] "

In *Life & Casualty Ins. Co.* v. *McLeod* (70 Ga. App. 181), the company's liability was limited if death resulted " while the insured is in military or naval service in time of war." The insured was fatally stabbed during an encounter with another while on leave. The court held that the company was liable only for the limited amount. A similar holding was made in *Lindeay* v. *Life & Casualty Ins. Co.* (70 Ga. App. 190), where the insured died in an automobile accident while on a fourteen-day leave from a military camp.

In *Ruddock* v. *Detroit Life Ins. Co.* (209 Mich. 638), under a policy providing that military or naval service in time of war was not a risk assumed by the policy, the court said (p. 651) : " An examination of the authorities is convincing that one has entered ' military service ' when he has passed the examination, taken the oath, been enrolled as a soldier, and becomes subject to the orders of the military branch of the Government. This, we think, is clearly the common understanding of that term. He then gives up for the time being the occupation of a civilian,

and takes up the tasks of a soldier. He may no longer come and go as he pleases. He is constantly subject to the orders of his superiors. If he violates the articles of war he is tried by court martial, a military court. His status is then fixed. He is as clearly in the military service when in training as when before the enemy."

In *Miller* v. *Illinois Bankers' Life Assn.* (138 Ark. 442), the policy provided " death while in the service in the army or navy of the government in time of war is not a risk covered at any time * * *." The insured died of pneumonia in a military camp and the appellate court stated (p. 445) : " An insurance company has the right to select the particular risks it is willing to assume, and there is no public policy against a contract of this sort exempting the insurance company, in advance, from liability for death of the insured while in the military or naval service of the Government."

In *Coit* v. *Jefferson Standard Life Ins. Co.* (28 Cal. 2d 1), where the policy limited the liability of the company if the death of the insured occurred " From any cause while the Insured is serving * * * in the military, naval or air forces of any country at war (declared or undeclared) ", the court stated (p. 5) : " ' * * * Aside, then from whatever light is shed on the present problem by authorities from other jurisdictions, the language, in our opinion, * * * means just what the trial judge held it to mean, namely, that death " from *any* cause," however remote from, or unrelated to, actual hostilities is within the limitation of liability if it occurs under the conditions named.' " (Italics mine.)

There appears to be no precise precedent in New York State, but in *Welts* v. *Connecticut Mut. Life Ins. Co.* (48 N. Y. 34), the court held that a civilian working for the Army cannot be said to have entered the military service in violation of the provision of the policy involved; however, it clearly distinguished such a situation from one as presented in the case at bar. In that case it said (p. 39) : " * * * there is no evidence that he was ever enlisted or enrolled as a private. * * * The general understanding of the term includes such persons only as are *liable* to do duty in the field as combatants." (Italics mine.)

There is nothing in the language of the policy indicating that the defendant would be relieved only if the insured were " engaged " in the military service or were in " active " service, which is a distinction made by some of the cases sustaining the

position of the insured. In my opinion the language of the policy is clear and unambiguous, and by its terms the defendant is relieved from paying the additional $5,000 for accidental death. To read it otherwise would be to distort its terms.

In the light of the foregoing, plaintiff's motion for summary judgment must be denied, and inasmuch as it appears that the defendant is entitled to judgment even in the absence of a cross motion therefor, judgment is awarded to it accordingly. (Rules Civ. Prac., rule 113.)

Settle order on notice.